Slip Op. 09-121

# UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr>
<td>

SKF USA INC., SKF FRANCE S.A., SKF
AEROSPACE FRANCE S.A.S., SKF
GmbH, and SKF INDUSTRIE S.p.A.,

Plaintiffs,

v.

UNITED STATES,

Defendant,

and

THE TIMKEN COMPANY,

Defendant-Intervenor.

</td>
<td>

Before:  Timothy C. Stanceu, Judge

Court No. 07-00393

</td>
</tr>
</table>

## OPINION

[Affirming certain aspects of the final results of administrative reviews of antidumping duty orders on ball bearings and parts thereof and declaring unlawful the policy, rule, or practice of the United States Department of Commerce to issue liquidation instructions fifteen days after the publication of final results of an administrative review]

Dated: October 27, 2009

*Steptoe & Johnson LLP* (*Herbert C. Shelley*, *Alice A. Kipel*, and *Susan R. Gihring*) for plaintiffs.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Claudia Burke* and *David D'Alessandris*); *Sapna Sharma*, *Mykhaylo A. Gryzlov*, *Deborah R. King*, and *Jonathan Zielinkski*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

*Stewart and Stewart* (*Geert M. De Prest*, *Terence P. Stewart*, *William A. Fennell*, and *Lane S. Hurewitz*) for defendant-intervenor.

Stanceu, Judge:  Plaintiffs SKF USA Inc., SKF France S.A., SKF Aerospace France S.A.S., SKF GmbH, and SKF Industrie S.p.A. (collectively, "SKF" or "plaintiffs") contest a final determination that the International Trade Administration, United States Department of Commerce ("Commerce" or the "Department") issued in administrative reviews of antidumping duty orders on ball bearings and parts thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom (the "Final Results").  In support of their first claim, plaintiffs raise various objections to Commerce's use of actual cost of production ("COP") data, rather than SKF's acquisition cost, to determine the constructed value ("CV") of subject merchandise that SKF purchased from an unrelated manufacturer of ball bearings and exported to the United States.  Second, plaintiffs challenge Commerce's use in the review of "zeroing" methodology, under which Commerce, when calculating a weighted-average dumping margin, deems sales of subject merchandise made in the United States at prices above normal value to have individual dumping margins of zero rather than negative margins.  In a third claim, plaintiffs challenge the Department's decision to issue duty assessment and liquidation instructions to United States Customs and Border Protection ("Customs" or "CBP") fifteen days after the publication of the final results of the administrative reviews, arguing that the antidumping statute requires Commerce to wait at least thirty days before issuing such instructions.

The court affirms the Department's use of the COP data and its use of the zeroing methodology.  The court concludes that Commerce's policy, rule, or practice of issuing liquidation instructions fifteen days after publication of the final results of an administrative review, which it stated in the Federal Register notice announcing the Final Results and in Federal Register notices pertaining to other reviews of antidumping duty orders, was not in accordance

with law.  The court grants appropriate declaratory relief on plaintiffs' third claim.  The court cannot conclude from the administrative record that the Department based its fifteen-day policy, rule, or practice on a consideration of the relevant factors.

## I. BACKGROUND

Commerce, pursuant to 19 U.S.C. § 1675(a) (2006), issued the contested determination in its seventeenth administrative reviews of antidumping duty orders on ball bearings and parts thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom for the period May 1, 2005 through April 30, 2006 (the "period of review").  *Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom: Final Results of Antidumping Duty Admin. Reviews and Rescission of Review in Part*, 72 Fed. Reg. 58,053 (Oct. 12, 2007) ("*Final Results*").  Plaintiffs initially advanced four claims, among which was a claim challenging the "model-matching" methodology that Commerce applied during the reviews.  Compl. ¶¶ 13-17.  At oral argument, upon plaintiffs' motion and in the absence of any objection by the opposing parties, the court allowed plaintiffs to withdraw this claim.  Tr. 3-4, Dec. 3, 2008.  The court therefore adjudicates plaintiffs' three remaining claims.

Before the court is plaintiffs' motion under USCIT Rule 56.2 for judgment upon the agency record, in which plaintiffs seek a remand directing Commerce to redetermine plaintiffs' weighted-average dumping margin without using COP data from the unaffiliated ball bearing supplier and without zeroing negative antidumping margins.  In support of their first claim, plaintiffs argue that Commerce erred both in requiring SKF to request and obtain COP data from the unaffiliated supplier and in using the COP data submitted, instead of the cost SKF incurred in acquiring the unaffiliated supplier's merchandise, to calculate the constructed value of that

merchandise. *See* Brief In Supp. of SKF's Rule 56.2 Mot. for J. upon the Agency R. 10-18

("Pls.' Br."). SKF points out that during the original investigation and sixteen subsequent

periods of reviews of ball bearing antidumping duty orders, Commerce used acquisition cost in

determining the constructed value of subject bearings that SKF sold but had obtained from

another manufacturer. Pls.' Br. 3. During the fifteenth administrative reviews (2003-2004),

Commerce announced that, when appropriate in future reviews, it would request all respondents

who bought and resold bearings from unaffiliated producers to provide COP data obtained from

the unaffiliated producers. *See id*. at 4, Attach. 13, at 4-6 (*Mem. from Director, Office 5,*

*AD/CVD Enforcement to Acting Deputy Assistant Sec'y for Imp. Admin.* 4-6 (May 6, 2005)).

After reviewing the respondents' submissions in the seventeenth reviews, Commerce deemed it

appropriate to use the unaffiliated supplier's actual production costs as the basis for calculating

the COP and CV where such data would have a significant impact on margin calculations and

where no comparison-market sale of the foreign like product is available for margin-calculation

purposes in reseller transactions. *Issues and Decision Mem. for the Antidumping Duty Admin.*

*Reviews of Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, Singapore, and*

*the United Kingdom for the Period of Review May 1, 2005, through April 30, 2006*, at 47 (Oct. 1,

2007) ("*Decision Mem.*"). Based upon information submitted by plaintiffs, Commerce then

determined that "[w]ith respect to SKF Germany [*i.e.*, SKF GmbH], which produced and

purchased ball bearings, a substantial portion of its U.S. sales and some of its home market sales

were sales of merchandise produced by unaffiliated suppliers." Pls.' Br., Attach. 3, at 4 (*Mem.*

*from Program Manager, AD/CVD Enforcement, to Director, Office 5, AD/CVD Enforcement* 4

(Sept. 7, 2006) ("*Unaffiliated Suppliers Mem.*")). For this reason, the Department required SKF

Germany "to report actual COP and CV data from the unaffiliated supplier which was the largest supplier, measured by the value of SKF Germany's U.S. sales" for the 2005-2006 period of review. *Id.* Departing from its previous methodology, which used acquisition cost, Commerce concluded that "[i]f acquisition costs do not capture all of the actual costs of the manufacturer supplying the bearings to the reseller, they are not an appropriate basis for the calculation of CV" and "the use of such acquisition costs would distort the reseller's dumping margin due to the missing elements of cost." *Decision Mem.* 48. Following issuance of the Department's preliminary results, SKF objected to Commerce's departure from its previous methodology. *Id.* at 41-46. The Department acknowledged SKF's objections but calculated constructed value based on the unaffiliated supplier's COP data rather than SKF's acquisition costs. *Id.* at 47-49; *see Final Results*, 72 Fed. Reg. at 58,054-55.

Plaintiffs' second claim is that Commerce acted contrary to the plain language of the statute, and construed the statute contrary to U.S. international obligations, in calculating SKF's weighted-average dumping margin by assigning dumping margins of zero to plaintiffs' individual sales made in the United States at prices above normal value. *See* Pls.' Br. 26-39; *Decision Mem.* 8-10. SKF contested the application of the zeroing methodology during the administrative reviews, submitting briefing on the issue in response to the Department's preliminary results. *Decision Mem.* 5-7. Rejecting SKF's position, Commerce decided to continue to rely on its zeroing methodology in preparing the Final Results. *Id.* at 8-10; *Final Results*, 72 Fed. Reg. at 58,054-55.

Plaintiffs' third claim challenges the Department's decision to issue liquidation instructions to Customs fifteen days after the publication of the Final Results. Pls.' Br. 2. In the

notice setting forth the Final Results, published on October 12, 2007, Commerce stated that

"[w]e intend to issue appropriate assessment instructions directly to CBP 15 days after

publication of these final results of reviews." *Final Results*, 72 Fed. Reg. at 53,054.  In stating

that Commerce would issue the instructions "15 days after publication," the Federal Register

notice appeared to depart from the procedure Commerce had announced in a 2002 policy

statement, in which policy statement Commerce announced that it would issue liquidation

instructions to Customs, pursuant to administrative reviews conducted under

19 U.S.C. § 1675(a)(1) and (a)(2), "within 15 days of publication of the final results of review in

the *Federal Register* or any amendments thereto."[1]  *Announcement Concerning Issuance of*

*Liquidation Instructions Reflecting Results of Admin. Reviews*, Aug. 9, 2002,

http://ia.ita.doc.gov/download/liquidation-announcement.html (updated Aug. 14, 2002) (last

visited October 27, 2009) ("*Announcement*"); *see* Pls.' Br., Attach. 11.

---

[1] In its entirety, the 2002 announcement provided as follows:

> The Department of Commerce announces that, effective immediately, it intends to issue liquidation instructions pursuant to administrative reviews conducted under section 751 of the Tariff Act of 1930, as amended [19 U.S.C. § 1675], to the U.S. Customs Service within 15 days of publication of the final results of review in the *Federal Register* or any amendments thereto.  This announcement applies to reviews conducted under sections 751(a)(1) and (2) of the Tariff Act.

> If you have any questions, please contact the staff member identified in the notice of final results of review published in the *Federal Register*.

*Announcement Concerning Issuance of Liquidation Instructions Reflecting Results of Admin. Reviews*, Aug. 9, 2002, http://ia.ita.doc.gov/download/liquidation-announcement.html (updated Aug. 14, 2002) (last visited Oct. 27, 2009); *see* Br. in Supp. of SKF's Rule 56.2 Mot. for J. upon the Agency R. ("Pls.' Br."), Attach. 11.

In commencing this action on October 23, 2007, eleven days after publication of the Final Results, plaintiffs moved for a preliminary injunction to prohibit Customs from liquidating entries of subject merchandise produced by or on behalf of plaintiffs that were made during the period of review. SKF's Consent Mot. for a Prelim. Inj. to Enjoin Liquidation of Entries. The court granted plaintiffs' motion for preliminary injunction two days later, to which defendant had consented. Order 1, Oct. 25, 2007. Under the preliminary injunction order, the liquidation of entries of plaintiffs' merchandise will remain enjoined during the pendency of this litigation, including all remands and appeals. *Id*.

## II. DISCUSSION

The court exercises subject matter jurisdiction under 28 U.S.C. § 1581(c) (2006) in adjudicating plaintiffs' claim challenging the Department's use of the unaffiliated supplier's cost of production data to determine constructed value and their claim challenging the Department's reliance on zeroing methodology to determine plaintiffs' weighted-average dumping margin. 28 U.S.C. § 1581(c). According to 28 U.S.C. § 1581(c), the court has jurisdiction to review actions commenced under 19 U.S.C. § 1516a (2006), including an action contesting a final determination in an administrative review issued under 19 U.S.C. § 1675(a). *See id.* In adjudicating each of these two claims, the court will hold unlawful a determination, finding, or conclusion found to be unsupported by substantial evidence on the record or otherwise not in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

The court exercises subject matter jurisdiction under 28 U.S.C. § 1581(i) over plaintiffs' claim challenging the Department's decision to issue liquidation instructions to implement the Final Results fifteen days after publication of the Federal Register notice. *See* 28 U.S.C.

§ 1581(i); *SKF USA Inc. v. United States*, 31 CIT __, Slip Op. 07-43, at 7-8 (Mar. 23, 2007)

("*SKF I*") (citing *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1304-05 (Fed. Cir. 2004),

and *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1002-03 (Fed. Cir. 2003)).[2]  The court

reviews the fifteen-day policy as provided in 5 U.S.C. § 706 (2006).  28 U.S.C. § 2640(e) (2006).

Under 5 U.S.C. § 706, the court must "hold unlawful and set aside agency action . . . found to be

. . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

5 U.S.C. § 706(2)(A).

A.  Commerce's Use of the Unaffiliated Supplier's Data on Cost of Production Was Lawful

Plaintiffs make several arguments in support of their first claim, which is that "Commerce

acted contrary to law and without substantial evidentiary support by requesting and utilizing

unaffiliated supplier cost of production data" in calculating constructed value for the subject

bearings that SKF obtained from an unaffiliated supplier and exported to the United States in the

seventeenth reviews.  Pls.' Br. 1.  SKF does not contest the decision by Commerce to determine

normal value according to the constructed value method for the sales at issue but instead argues

that Commerce was required by law, on the particular record before it, to use SKF's cost of

acquiring the subject merchandise from its unaffiliated supplier when determining constructed

value in general, and COP in particular, according to 19 U.S.C. § 1677b(e) (2006).

---

[2] The court held in *SKF USA Inc. v. United States* that jurisdiction over a claim challenging the previous fifteen-day policy does not fall under 28 U.S.C. § 1581(c), explaining that "[t]he language in the Federal Register notice to which plaintiffs direct the court's attention is a statement of a *present* intention on the part of Commerce to take, within fifteen days of the publication of the Final Results, the *future* action of instructing Customs to liquidate, in accordance with the Final Results, the affected entries."  *SKF USA Inc. v. United States*, 31 CIT __, __, Slip Op. 07-43, at 7 (Mar. 23, 2007) ("*SKF I*").

Plaintiffs argue, first, that it was unlawful for Commerce to depart from the methodology used in the sixteen prior sets of reviews, which determined COP and normal value based on acquisition cost, without providing "compelling reasons" for doing so. Pls.' Br. 11. According to SKF, Commerce did not meet that burden. *Id.* In making this argument, SKF misstates the burden that an agency must meet to justify a change in its established practice. Commerce was under no obligation to set forth "compelling reasons" and was free to change its methodology provided it stated its rationale for doing so and provided the stated rationale is reasonable. *See Koyo Seiko Co. v. United States*, 36 F.3d 1565, 1575 (Fed. Cir. 1994). Commerce grounded its decision to change its methodology in its reasoning that "if acquisition costs do not capture all of the actual costs of the manufacturer supplying the bearings to the reseller, they are not an appropriate basis for the calculation of CV" and that "the use of such acquisition costs would distort the reseller's dumping margin due to the missing elements of cost." *Decision Mem.* 48. Although it may have been entirely reasonable for Commerce to presume that SKF's acquisition cost included the full cost of production as well as reasonable amounts representing profit and general expenses, nothing in the statute required Commerce to rely on such a presumption in determining constructed value on the record before it. To the contrary, the statute expressly includes in the constructed value calculation "the cost of materials and fabrication or other processing of any kind" used in producing the subject merchandise. 19 U.S.C. § 1677b(e)(1). Where acquisition cost is used in the normal value calculation, the cost of production is not determined separately from the elements of profit and general expenses. Under the plain meaning of § 1677b(e)(1), Commerce has authority to examine the actual cost of production. Therefore, in this case Commerce did not act unreasonably in choosing not to follow its previous

practice and instead deciding to examine data on the actual cost incurred in producing the subject merchandise where, as here, record data existed that made it feasible for Commerce to do so.

Plaintiffs also argue that according to 19 U.S.C. § 1677b(f)(2) and (f)(3), "Commerce may disregard costs, including acquisition costs, provided by a respondent only between *affiliated persons* when such transactions were *not at arm's length* or otherwise *did not reflect market value* for the good or major input purchased." Pls.' Br. 12. The two statutory provisions plaintiffs cite in support of this argument address the question of when transactions between *affiliated* persons may be disregarded and thus do not bear on the issue under consideration. Neither of these provisions required the Department to use the acquisition cost, as opposed to data on the actual production cost, in determining constructed value simply because the acquisition cost was based on prices negotiated between *unaffiliated* persons.

Plaintiffs also cite various other provisions within § 1677b to support an argument that Commerce was required to use the acquisition cost data because these were data of the exporter under examination, whereas the COP data were data of a producer that was not a party to the reviews. Pls.' Br. 13-14. None of the provisions relied upon by SKF addresses the narrow question of whether Commerce could use the data of a non-party to the proceeding in determining cost of production for purposes of § 1677b(e)(1), under which, in contrast to various other provisions in the section, Commerce is not limited to the use of information provided by the party under examination or the use of information provided by other parties to the proceeding. The statute provides as a general rule that for purposes of § 1677b(e), "[c]osts shall normally be calculated based on the records of the exporter or producer of the merchandise . . ." 19 U.S.C. § 1677b(f)(1)(A). In 19 U.S.C. § 1677(28), Congress defined the term "exporter or

producer" generally to mean "the exporter of the subject merchandise, the producer of the subject merchandise, or both where appropriate." 19 U.S.C. § 1677(28). The same provision also states that

> [f]or purposes of Section 1677b of this title, the term "exporter or producer" includes both the exporter of subject merchandise and the producer of the same subject merchandise to the extent necessary to accurately calculate the total amount of incurred and realized for costs, expenses, and profits in connection with the sale of that merchandise.

*Id.* Further, the Statement of Administrative Action accompanying the Uruguay Round Agreements Act ("SAA") clarifies that "the purpose of [19 U.S.C. § 1677(28)], which is consistent with current Commerce practice, is to clarify that where different firms perform the production and selling functions, Commerce may include the costs, expenses, and profits of each firm in calculating cost of production and constructed value." Statement of Administrative Action, H.R. Doc. No. 103-465, vol. 1, at 835 (1994). Nothing in the statute limits Commerce's inquiry only to the COP records of a party to the proceeding.

Plaintiffs contend that Commerce's decision not to use acquisition cost was unsupported by substantial evidence, and therefore unlawful, because "Commerce made no actual finding that SKF GmbH's acquisition costs did 'not capture all of the actual costs of the manufacturer.'" Pls.' Br. 12 (quoting *Decision Mem.* 48). This argument, too, is unconvincing. The statute, in 19 U.S.C. § 1677b(e)(1), directs Commerce to include in constructed value the "cost" of producing the subject merchandise. Only a strained reading of the provision could support the conclusion that Commerce is permitted to use the *actual* cost of production only if it first makes a finding that the cost an exporter incurs in acquiring subject merchandise from the producer–a

cost of which the statute makes no specific mention–does not fully capture the actual cost.[3]

SKF's argument imputes to Congress an intent not evident in the plain meaning or purpose of

§ 1677b(e)(1) or any related provision of the statute.

Finally, plaintiffs allege that "Commerce's requirement that respondents obtain and

submit cost data from unaffiliated suppliers, and its subsequent determination to utilize those

cost data, runs afoul of due process" and "curtails SKF's ability to meaningfully participate in the

review." Pls.' Br. 16. In putting forth their due process argument, plaintiffs do not make out a

claim that the statute itself, either on its face or as applied to them, violated the Fifth Amendment

to the United States Constitution. The court construes their due process argument to be that

Commerce acted unfairly, and without necessary transparency, in using and relying upon cost

data that SKF could not examine and verify for accuracy. *See id*. at 16-18. In support of their

due process claim, plaintiffs cite *Gulf States Tube Division Of Quantex Corp. v. United States*,

21 CIT 1013, 1039, 981 F. Supp. 630, 652 (1997), *Hyundai Electronics Industries Co. v. United*

*States*, 28 CIT 517, 342 F. Supp. 2d 1141 (2004), and *Mittal Steel Galati S.A. v. United States*,

31 CIT __, 502 F.Supp. 2d 1295 (2007).

The premise of plaintiffs' due process argument is misguided. Under the administrative

protective order ("APO") procedures, SKF's counsel had the opportunity to review and object to

Commerce's use of the proprietary COP data of the unaffiliated supplier (and in fact did so

object). *See Decision Mem.* 48. Plaintiffs do not cite to an established principle or precedent

---

[3] Commerce could reach the finding SKF argues was required only by examining the producer's actual data on the cost of production. SKF argues elsewhere in its motion that it was unlawful for Commerce even to seek to obtain these data. *See* Pls.' Br. 16-18. Although SKF's motion does not expressly so state, the court construes SKF's motion to make these two arguments in the alternative.

under which the court must conclude that this opportunity was insufficient from the standpoint of procedural fairness.  Commerce routinely follows APO procedures in numerous contexts that arise in administering the antidumping laws because such procedures are necessary to ensure protection of proprietary information submitted by interested parties and the willingness of these parties to submit such information.  SKF does not provide a reason why the court necessarily must conclude that Commerce's use of the APO procedures in this particular instance prejudiced SKF to such an extent as to constitute a denial of procedural fairness such that the court, on remand, must prohibit Commerce from using these data.  Plaintiffs' citation to decisions of the court does not overcome the flaw in the due process argument advanced in this case.  *Gulf States Tube Division of Quantex Corp. v. United States* held that the foreign producer in that case was not prejudiced by the Department's refusal to allow it to submit new factual material with its reply brief.  21 CIT at 1039-40, 981 F. Supp. at 652-653.  *Hyundai Electronics Industries Co. v. United States* affirmed as procedurally sufficient Commerce's decision to grant respondent-plaintiffs a three-week period to review and respond to ex parte communications.  28 CIT at 527, 342 F. Supp. 2d at 1151.  *Mittal Steel Galati S.A. v. United States*, which involved Commerce's former fifteen-day policy for issuing liquidation instructions, did not address the due process issue plaintiffs raise.  31 CIT at __, 502 F.Supp. 2d at 1313-17.

In summary, plaintiffs' arguments challenging the Department's acquiring and using the COP data are unavailing.  The court, therefore, affirms the Department's decision to use the COP data from plaintiffs' unaffiliated supplier in determining the constructed value of the affected subject merchandise.

        B.  Plaintiffs' Arguments Challenging Zeroing Conflict with Controlling Precedent

        Plaintiffs' challenge the Department's use of zeroing in calculating the weighted-average

dumping margin for SKF.  To calculate a weighted-average dumping margin in an administrative

review, Commerce first must determine two values for each entry of subject merchandise falling

within the period of review: the normal value and the export price ("EP") (or the constructed

export price ("CEP") if the EP cannot be determined).  19 U.S.C. § 1675(a)(2)(A)(i).  Commerce

then determines a margin for each entry by taking the amount by which the normal value exceeds

the EP or CEP.  19 U.S.C. §§ 1675(a)(2)(A)(ii), 1677(35)(A) (2006).  If normal value does not

exceed EP or CEP, Commerce, when determining a weighted-average dumping margin, assigns a

value of zero, not a negative value, to the entry.  Finally, Commerce aggregates these values to

calculate a weighted-average dumping margin.  19 U.S.C. § 1677(35)(B).

        Plaintiffs assert that "zeroing" is neither required by the antidumping statute nor consistent

with the statute when considered in its entirety.  *See* Compl. ¶ 20.  They argue that "the plain

language of the statute demonstrates Congress' intent that Commerce use both negative and

positive values."  Pls.' Br. 32.  Plaintiffs insist that "Commerce legally erred in calculating the

weighted-average dumping margins, assessment rates and deposit rates for SKF by not giving full

credit to sales made to or in the United States at prices above normal value" and thereby

unlawfully distorted the weighted-average dumping margins.  Compl. ¶ 19; *see* Pls.' Br. 9 (stating

that the weighted-average margins assigned to plaintiffs of 8.99% on ball bearings from France,

3.06% on ball bearings from Germany, and 8.83% on ball bearings from Italy, would have been

-18.79%, -33.34%, and -27.51%, respectively, if calculated without zeroing).

Plaintiffs also argue that Commerce must interpret the antidumping statute consistently with international obligations of the United States, as set forth in decisions of the World Trade Organization's ("WTO") Dispute Settlement Body, under which zeroing has been rejected. Compl. ¶ 21; Pls.' Br. 26-31, 36; *see* Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade 1994, Apr. 15, 1994, Marrakesh Agreement Establishing the World Trade Organization, Annex 1A, 1868 U.N.T.S. 201 (1994) ("Antidumping Agreement"). Relying, at least in part, on the doctrine originating in *Murray v. The Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804), plaintiffs argue that "the U.S. Government should continue to comply with decisions of the Appellate Body that find Commerce's zeroing methodology to be directly contrary to the requirements and provisions set forth in the controlling international Antidumping Agreement." Pls.' Br. 36. Plaintiffs point to statements by the United States expressing intent to take action on the zeroing issue. *Id.* at 27-29.

The court rejected similar arguments by SKF challenging Commerce's zeroing methodology. *See SFK USA Inc. v. United States*, 33 CIT__, Slip Op. 09-32 (Apr. 17, 2009) ("*SKF II*"). *SKF II* affirmed the Department's use of zeroing to determine plaintiffs' weighted-average dumping margin in the final results of administrative reviews for the previous period of review, May 1, 2004 though April 1, 2005. *See id*. More recently, the court addressed the reasons why recent developments related to WTO decisions do not provide a basis on which the court may depart from binding precedent of the Court of Appeals for the Federal Circuit ("Court of Appeals"), which upheld as reasonable the Department's statutory interpretation that zeroing is permissible. *See Union Steel v. United States*, 33 CIT __, Slip Op. 09-105 (Sept. 28, 2009) (relying upon *Corus Staal BV v. United States*, 502 F.3d 1370 (Fed. Cir. 2007), which upheld as

reasonable Commerce's use of zeroing in an administrative review of an antidumping duty order

on hot-rolled steel, and *NSK Ltd. v. United States*, 510 F.3d 1375 (Fed. Cir. 2007), which rejected

the argument that use of zeroing should be held unlawful based on a decision of the WTO Dispute

Settlement Body and on statements by the United States indicating that the United States would

comply with that decision).  The Court of Appeals concluded that

> until Commerce abandons zeroing in administrative reviews such as this one, a
> remand in this case would be unavailing.  Therefore, because Commerce's zeroing
> practice is in accordance with our well-established precedent, *until Commerce
> officially abandons the practice pursuant to the specified statutory scheme, we
> affirm its continued use in this case.*

*Union Steel*, 33 CIT at __, Slip. Op. 09-105, at 18-19 (quoting *NSK*, 510 F.3d at 1380) (emphasis

added).  For these various reasons, the court must affirm the Department's determination to apply

zeroing in this case.

   C.  Commerce's Policy, Rule, or Practice of Issuing Liquidation Instructions Fifteen Days after
        Publication of the Final Results of an Administrative Review Is Contrary to Law

        Plaintiffs challenge Commerce's decision, announced in the Final Results, to issue

liquidation instructions to Customs fifteen days after publication of the Final Results.  *See Final

Results*, 72 Fed. Reg. at 58,054.  In *SKF II*, the court declared that Commerce's previous policy of

issuing liquidation instructions *within* fifteen days of publication violated 19 U.S.C. § 1516a(c)(2)

"because that policy allows liquidation to occur almost immediately upon publication rather than

providing a minimally reasonable time during which a party may seek to obtain an injunction

against liquidation."  *SKF II*, 33 CIT at __, Slip Op. 09-32, at 27.  The court reasoned that the

previous policy "induces an absurd, and unnecessary, 'race to the courthouse' that impermissibly

burdens the right of a prospective plaintiff to seek the injunction that Congress contemplated in enacting § 1516a(c)(2) and frustrates the purpose of that provision." *Id.* at 24.

The threshold question presented by SKF's third claim in this action is whether SKF has standing to challenge the decision to issue liquidation instructions fifteen days after publication despite having obtained an injunction against liquidation of its entries. In *SKF I*, in an analogous circumstance, the court held that SKF had standing to challenge Commerce's previous policy of issuing liquidation instructions within fifteen days of publication, even though SKF did not suffer the harm caused by liquidation of its entries prior to its obtaining an injunction. *SKF I*, 31 CIT at __, Slip Op. 07-43, at 10-11. The court reasoned that a claim may present an actual case or controversy if the action originally complained of is capable of repetition, yet evading review. *Id.* (citations omitted); *see also SKF II*, 33 CIT at __, Slip Op. 09-32, at 20-22. In *SKF I* and *SKF II*, however, Commerce acted according to the 2002 announcement of its original fifteen-day policy. As of the date of the issuance of this Opinion, Commerce has not announced on its website that it has changed the policy set forth in the 2002 announcement. *See Announcement*. Therefore, the question that arises with respect to standing is whether Commerce has adopted a new, generally applicable policy, rule, or practice that will be the subject of repeated application in future reviews. To resolve this question, the court takes judicial notice that Commerce routinely has applied in multiple administrative reviews, including those in which SKF was a party to the proceeding, the same revised fifteen-day policy, rule, or practice that it applied in this case. *See, e.g.*, *Certain Cased Pencils from the People's Republic of China: Am. Final Results of Antidumping Duty Admin. Review*, 74 Fed. Reg. 45,177 (Sept. 1, 2009); *Granular Polytetrafluoroethylene Resin From Italy: Am. Final Results of Antidumping Duty Admin. Review*,

74 Fed. Reg. 19,931 (Apr. 30, 2009); *Ball Bearings and Parts Thereof from France, Germany, Italy, Japan and the United Kingdom: Final Results of Antidumping Duty Admin. Reviews and Rescission of Review in Part*, 73 Fed. Reg. 52,823 (Sept. 11, 2008). SKF has encountered Commerce's new policy, rule, or practice ("new fifteen-day policy") since the issuance of the Final Results and can be expected to encounter it again. The court concludes, therefore, that SKF has standing to challenge the new fifteen-day policy in this litigation.

The next question the court considers is whether, and to what degree, deference should be accorded to Commerce's new fifteen-day policy and the application of that policy to implement the Final Results in this case. The new fifteen-day policy was not the subject of an agency rule making procedure that would qualify it for the level of judicial deference contemplated by *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984).[4] Nor would the new fifteen-day policy, which was not part of the Final Results but rather a decision addressing a subsequent matter, *i.e.*, the liquidation of entries to implement the Final Results, qualify for *Chevron* deference under the principle set forth in *Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1379-80 (Fed. Cir. 2001). *See SKF II*, 33 CIT at __, Slip Op. 09-32, at 17-18. The court, therefore, considers Commerce's new fifteen-day policy according to the degree of deference contemplated by *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). *See United States v. Mead Corp.,* 533 U.S. 218 (2001); *Christensen v. Harris County*, 529 U.S. 576, 587 (2000).

---

[4] As discussed *infra*, plaintiffs raise arguments grounded in 19 U.S.C. § 1516a and USCIT Rule 56.2(a) but do not assert a claim that Commerce, in establishing a policy on the timing of issuance of liquidation instructions, was required by the Administrative Procedure Act, 5 U.S.C. § 553 (2006) (the "APA"), to adhere to notice-and-comment rule making procedures.

In challenging the new fifteen-policy as applied in these reviews, plaintiffs argue, first, that the policy "violates a party's statutory rights as to judicial review" as set forth in 19 U.S.C. § 1516a(a)(2), which plaintiffs construe to grant a party a right to wait thirty days after publication before filing its summons and an additional thirty days after that filing to file its complaint. Pls.' Br. 38. Second, they argue that the policy violates USCIT Rule 56.2(a) "as to the timing for filing motions for preliminary injunctions in cases brought under § 1516a." *Id.* Third, they argue that the policy is in direct conflict with a previous decision of the Court of International Trade. *Id.* at 38 (citing *Tianjin Mach. Imp. & Exp. Corp. v. United States*, 28 CIT 1635, 353 F. Supp. 2d 1294 (2004), *aff'd mem.*, 146 Fed. Appx. 493 (Fed. Cir. 2005) (per curiam)).

The court rejected the first two of SKF's arguments in *SKF II*. *See SKF II*, 33 CIT at __, Slip Op. 09-32, at 18-20. As discussed in *SKF II*, 19 U.S.C. § 1516a(a)(2) does not specify that Commerce must wait thirty days after publication, or any other specific time period, before issuing the liquidation instructions. *See id.* Rather, the provision requires a party contesting the final results of an administrative review to file a summons within thirty days of the publication of the final results and to file a complaint within thirty days after the filing of the summons.[5] *See* 19 U.S.C. § 1516a(a)(2). Congress conditioned the exercise of the jurisdiction of the Court of International Trade to review the agency determination on compliance with these two statutory requirements. In § 1516a(a)(2), Congress made no mention of injunctive relief to prevent

---

[5] Subsection (a)(2)(A) of 19 U.S.C. § 1516a provides that "an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade by filing a summons, and within thirty days thereafter a complaint." 19 U.S.C. § 1516a(a)(2)(A).

liquidation of entries, a subject that is addressed instead in § 1516a(c)(2), which provides in pertinent part that

> the United States Court of International Trade may enjoin the liquidation of some or all entries of merchandise covered by a determination of . . . the administering authority . . . upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances.

19 U.S.C. § 1516a(c)(2). Thus, in establishing, in subsection (a)(2) of § 1516a, the thirty-day summonsing period and the thirty-day period for filing the complaint, Congress gave no indication of an intent to affect the time period under which a party may seek an injunction under subsection (c)(2). *See id.* As also discussed in *SKF II*, USCIT Rule 56.2(a) sets forth, as a general rule subject to an exception for good cause shown, a maximum time of thirty days after service of the complaint in which a party must move for the injunction. *SKF II*, 33 CIT at __, Slip Op. 09-32, at 19-20. The rule does not address the question of the minimum time a party is granted to move for the injunction or the question of how long Commerce must wait before issuing liquidation instructions. *Id.* With respect to plaintiffs' third argument, *Tianjin* does not require the court to hold that Commerce's new fifteen-day policy is unlawful. Plaintiffs are correct that the Court of International Trade stated in *Tianjin* that Commerce's previous fifteen-day liquidation policy was not in accordance with law because it contravened the sixty-day time frame established by 19 U.S.C. § 1516a(a)(2) for filing a summons and a complaint, but that statement was not effectuated in the judgment entered in the case and therefore must be considered to be *dicta*. *See Tianjin*, 28 CIT at 1650-51, 353 F. Supp. 2d at 1309-10. As a result, the decision of the Court of Appeals affirming the judgment in *Tianjin* did not address Commerce's previous fifteen-day policy and did not establish a precedent controlling in this case.

In support of their challenge to the new fifteen-day policy, plaintiffs also make a more general argument that the time they are allotted to prepare and file their summons, complaint, and motion for a preliminary injunction is inadequate for their exercising their right to judicial review. *See* Pls.' Br. 37 (stating that "SKF determined that it had no choice but to act quickly and file its summons and complaint simultaneously" and "was forced to file a summons, complaint and a motion for preliminary injunction within 15 days of publication of the *Final Results*"). The statute, in 19 U.S.C. § 1516a(c), does not specify any particular time period that Commerce must allow for parties to initiate an action and seek the injunctive relief contemplated by that provision. *See* 19 U.S.C. § 1516a(c). The time period is a matter left to Commerce to determine. The court, therefore, must consider whether Commerce's new policy, rule, or practice of allowing fifteen days for this purpose is permissible under the applicable arbitrary, capricious standard of review that applies to plaintiffs' third claim according to 28 U.S.C. § 2640(e) and 5 U.S.C. § 706. This standard is a highly deferential one under which the court is not to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Nevertheless, the court is required, even under this deferential standard, to examine the agency's action upon the administrative record and to "'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285 (1974) (quoting *Overton Park*, 401 U.S. at 416).

The court finds in the administrative record only one document addressing the reasoning behind the decision to adopt the new fifteen-day policy and to apply that policy to the implementation of the Final Results. That document is the Decision Memorandum, which

responds in Comment 26 to SKF's arguing that Commerce must provide thirty or sixty days

before issuing liquidation instructions to avoid abrogating a party's right to judicial review.

*Decision Mem.* 64-65.  In response, Commerce stated that it "will continue to issue our liquidation

instructions 15 days after publication of the final results of review unless we are aware than an

injunction has been filed or is imminent." *Id.* at 65.  The only reasons Commerce gave were "the

six-month deemed-liquidation requirements of 19 USC 1504(d) and CBP's stated need to have a

significant portion of that time to complete liquidation of numerous entries such as those covered

by these antidumping duty orders." *Id.*

The issue of how much time interested parties are afforded to initiate an action under

19 U.S.C. § 1516a and seek an injunction against liquidation unquestionably is important to the

functioning of the statutory scheme under which parties may obtain meaningful judicial review of

the final results of an administrative review of an antidumping duty order.  It was appropriate for

Commerce, under the statutory scheme, to consider the pressures exerted on Customs by the six-

month deemed liquidation period of 19 U.S.C. § 1504(d).  However, there is no indication in the

record that Commerce considered any competing factor or factors.  In particular, the record does

not disclose whether Commerce considered the importance of an orderly administration of the

statutory scheme, under which affected parties may exercise freely their right to seek and obtain

meaningful judicial review, and the need for Commerce to achieve its regulatory objectives

without imposing unnecessary costs and burdens on affected parties.  The judicial review

provisions of 19 U.S.C. § 1516a, and the injunction provision of § 1516a(c) in particular, required

Commerce to consider these factors.  In highlighting the need to allocate to Customs "a significant

portion" of the six-month period, Commerce did not discuss why Customs must be granted nearly

all (*i.e.*, approximately 165 days or more) of that period, leaving only fifteen days in which prospective plaintiffs may complete all necessary steps in order to protect their rights.[6]  The policy Commerce chose forces plaintiffs to prepare and file a summons, a complaint, and a motion for a preliminary injunction, all within the fifteen-day period following publication.  During that period, a plaintiff also must engage the defendant (and, possibly, a defendant-intervenor) in discussions concerning consent to an injunction and, should consent not be forthcoming, must prepare to litigate the injunction issue expeditiously.  The new policy also burdens litigants and the Court of International Trade with process directed to temporary restraining orders that otherwise would not be necessary.  Commerce gave no indication that it considered allowing a time period that would alleviate these extreme time pressures on litigants yet still allow Customs ample time to comply with the liquidation requirement of 19 U.S.C. § 1504(d).  Absent any indication in the record that Commerce gave thought to these competing factors, the court cannot sustain the decision to adopt the new fifteen-day policy that Commerce applied in this case.  *See Bowman*, 419 U.S. at 285-86; *Overton Park*, 401 U.S. at 416.

As relief on its third claim, SKF "respectfully requests that this Court find that Commerce's issuance of liquidation instructions less than 30 days after the publication of the *Final Results* was contrary to law."  Pls.' Br. 40.  The court construes this request as a demand for

---

[6] The court takes judicial notice that Commerce implements its new fifteen-day policy, as it did its previous fifteen-day policy, together with a practice of issuing liquidation instructions that are effective immediately; *i.e.*, Customs is not instructed to wait any period of time before commencing liquidation of affected entries.  *See, e.g.*, *Boilerplate Email Instructions to U.S. Customs and Border Prot.*, Items 1, 27a, 28, http://ia.ita.doc.gov/download/custboil.htm (updated Aug. 18, 2008) (last visited Oct. 27, 2009) (setting forth "General Information About AD/CVD Operations E-mails," "Liquidation Instructions – Antidumping," and "Automatic Liquidation Instructions for Antidumping Cases").

a declaratory judgment.[7] And although plaintiffs request relief holding that at least 30 days must elapse before liquidation instructions may issue, it is not for the court to establish a rule or policy for the timing of issuance of liquidation instructions. Such a rule or policy, which necessarily affects substantive rights of interested parties and imposes obligations and burdens on these parties, must be established according to an appropriate agency proceeding allowing the relevant factors to be considered, such as a rule making proceeding that provides for notice and the opportunity for public comment.[8] For these reasons, the court will award plaintiffs a declaratory judgment that the Department's new fifteen-day policy, to which Commerce referred in the Federal Register notice announcing the Final Results, is contrary to law. *See Final Results*, 72 Fed. Reg. at 58,054. In summary, the court concludes that Commerce, in adopting the new policy, failed to consider the factors that the governing statutory provisions make relevant to any Departmental rule or policy on the timing of the issuance of assessment and liquidation instructions to Customs.

### III. CONCLUSION

On plaintiffs' first claim, the court affirms Commerce's decision in the Final Results to use COP data from plaintiffs' unaffiliated supplier to determine plaintiffs' dumping margin. With respect to plaintiffs' second claim, the court affirms Commerce's decision in the Final Results to

---

[7] Certain other forms of relief are not appropriate because SKF obtained an injunction against liquidation. *See SFK USA Inc. v. United States*, 33 CIT__, __, Slip Op. 09-32, at 22, 27-28 (Apr. 17, 2009) ("*SKF II*").

[8] Because plaintiffs make no claim that Commerce acted unlawfully in failing to adhere to notice-and-comment rule making procedures in establishing its new fifteen-day policy, and because the court holds that the Department's new fifteen-day policy was unlawful for failure to consider appropriate factors, the court does not rule on issues involving the applicability of the APA notice-and-comment requirement of 5 U.S.C. § 553 and whether any exception to that requirement could have applied.

assign a value of zero to negative dumping margins on individual sales that plaintiffs made above normal value. On their third claim, plaintiffs are entitled to a declaratory judgment that Commerce's new fifteen-day policy is contrary to law because Commerce failed to consider all relevant factors in adopting a policy, rule, or practice governing the timing for issuance of assessment and liquidation instructions to Customs. Judgment will be entered accordingly.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: October 27, 2009
New York, New York