**Slip Op. 09-148**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

<table>
<tr>
<td>

**SKF USA INC., SKF FRANCE S.A., SKF AEROSPACE FRANCE S.A.S., SKF GmbH, and SKF INDUSTRIE S.p.A.**,

Plaintiffs,

v.

**UNITED STATES**,

Defendant,

and

**THE TIMKEN COMPANY**,

Defendant-Intervenor.

</td>
<td>

**Before: Timothy C. Stanceu, Judge**

**Court No. 08-00322**

</td>
</tr>
</table>

**OPINION AND ORDER**

[Remanding in part, and affirming in part, the final results of administrative reviews of antidumping duty orders and holding unlawful the policy, rule, or practice of the United States Department of Commerce to issue liquidation instructions fifteen days after the publication of the final results of an administrative review]

Dated: December 21, 2009

*Steptoe & Johnson LLP* (*Herbert C. Shelley*, *Alice A. Kipel*, *Susan R. Gihring*, and *Laura R. Ardito*) for plaintiffs.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*L. Misha Preheim*); *Joanna V. Theiss*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

*Stewart and Stewart* (*Geert M. De Prest*, *Terence P. Stewart*, *William A. Fennell*, and *Lane S. Hurewitz*) for defendant-intervenor.

Stanceu, Judge:  Plaintiffs SKF USA Inc., SKF France S.A., SKF Aerospace France S.A.S., SKF GmbH, and SKF Industrie S.p.A. (collectively, "SKF" or "plaintiffs") contest a final determination that the International Trade Administration, United States Department of Commerce ("Commerce" or the "Department") issued in the eighteenth administrative reviews of antidumping duty orders on ball bearings and parts thereof from France, Germany, Italy, Japan, and the United Kingdom (the "Final Results").  Plaintiffs claim, first, that Commerce acted contrary to law in requesting actual cost of production ("COP") data for use in determining the constructed value ("CV") of subject merchandise that SKF GmbH purchased from an unrelated manufacturer of ball bearings and exported to the United States.  Second, plaintiffs claim that Commerce unlawfully invoked facts otherwise available and drew an adverse inference after plaintiffs' unaffiliated supplier failed to submit timely the COP data that Commerce had requested.  Third, plaintiffs object to Commerce's use of "zeroing" methodology to calculate their dumping margins in the reviews, under which Commerce, when calculating a weighted-average dumping margin, deems sales of subject merchandise made in the United States at prices above normal value to have individual dumping margins of zero rather than negative margins.  In their fourth claim, plaintiffs challenge the Department's decision to issue duty assessment and liquidation instructions to United States Customs and Border Protection ("Customs" or "CBP") fifteen days after the publication of the final results of the administrative reviews.

On plaintiffs' first claim, the court concludes that Commerce acted lawfully in requesting and obtaining COP data from plaintiffs' unaffiliated supplier to calculate the constructed value of the merchandise obtained from that supplier.  The court concludes, however, that Commerce acted contrary to law in drawing an inference adverse to SKF GmbH upon the failure of the

unaffiliated supplier to make a timely submission of the requested COP data.  With respect to plaintiffs' third claim, the court affirms the Department's use of the zeroing methodology as used in the eighteenth administrative reviews.  As to plaintiffs' fourth claim, the court concludes that Commerce's policy, rule, or practice of issuing liquidation instructions fifteen days after publication of the final results of an administrative review, which it stated in the Federal Register notice announcing the Final Results and in Federal Register notices pertaining to other reviews of antidumping duty orders, was not in accordance with law.

## I. BACKGROUND

Pursuant to 19 U.S.C. § 1675(a) (2006), Commerce initiated the eighteenth administrative reviews of the antidumping duty orders on imports of ball bearings and parts thereof from France, Germany, Italy, Japan, and the United Kingdom, for the period May 1, 2006 through April 30, 2007 (the "period of review" or "POR").  *See Initiation of Antidumping & Countervailing Duty Admin. Reviews, Request for Revocation in Part & Deferral of Admin. Review*, 72 Fed. Reg. 35,690 (June 29, 2007).  On May 7, 2008, Commerce published the preliminary results of the administrative reviews.  *Ball Bearings & Parts Thereof from France, Germany, Italy, Japan, & the United Kingdom: Prelim. Results of Antidumping Duty Admin. Reviews & Intent to Rescind Reviews in Part*, 73 Fed. Reg. 25,654 (May 7, 2008) ("*Prelim. Results*").  On September 11, 2008, Commerce issued the contested determination.  *Ball Bearings & Parts Thereof from France, Germany, Italy, Japan, & the United Kingdom: Final Results of Antidumping Duty Admin. Reviews & Rescission of Reviews in Part*, 73 Fed. Reg. 52,823 (Sept. 11, 2008) ("*Final Results*").  In the Final Results, Commerce assigned to SKF GmbH a weighted-average dumping margin of 4.15%.  *Final Results*, 73 Fed. Reg. at 52,825.  In

calculating the 4.15% rate, Commerce, invoking facts otherwise available and an adverse inference pursuant to 19 U.S.C. § 1677e (2006), applied a rate of 17.66% to the sales of subject merchandise that SKF GmbH purchased from the unaffiliated supplier because requested COP information pertaining to that supplier was not timely submitted to Commerce during the review. *Id.* at 52,824; *Issues & Decision Mem. for the Antidumping Duty Admin. Reviews of Ball Bearings & Parts Thereof from France, Germany, Italy, Japan, & the United Kingdom for the Period of Review May 1, 2006, through April 30, 2007*, at 57 (Sept. 4, 2008) ("*Decision Mem.*"). Also, in the Final Results, Commerce calculated SKF GmbH's weighted-average dumping margin by assigning dumping margins of zero to individual sales made in the United States at prices above normal value. *Final Results*, 73 Fed. Reg. at 52,826; *Decision Mem.* 10. Before the court is plaintiffs' motion under USCIT Rule 56.2 for judgment upon the agency record, in which plaintiffs seek a remand directing Commerce to redetermine SKF GmbH's weighted-average dumping margin without using COP data from the unaffiliated ball bearing supplier, without utilizing facts otherwise available or an adverse inference, and without zeroing negative antidumping margins. Also before the court is plaintiffs' motion for judgment upon the agency record under USCIT Rule 56.1 challenging the Department's decision to issue liquidation instructions to Customs fifteen days after the publication of the Final Results, which it announced in the Federal Register notice by which it published the Final Results. *Final Results*, 73 Fed. Reg. at 52,825.

## II. Discussion

The court exercises subject matter jurisdiction under 28 U.S.C. § 1581(c) (2006) in adjudicating plaintiffs' claims challenging the Department's request for the unaffiliated

supplier's COP data to determine constructed value, the Department's application of facts otherwise available with an adverse inference, and the Department's reliance on zeroing methodology. 28 U.S.C. § 1581(c). According to 28 U.S.C. § 1581(c), the court has jurisdiction to review actions commenced under 19 U.S.C. § 1516a (2006), including an action contesting a final determination in an administrative review issued under 19 U.S.C. § 1675(a). *See id.* In adjudicating each of these three claims, the court will hold unlawful a determination, finding, or conclusion found to be unsupported by substantial evidence on the record or otherwise not in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

The court exercises subject matter jurisdiction under 28 U.S.C. § 1581(i) over plaintiffs' claim challenging the Department's decision to issue liquidation instructions to implement the Final Results fifteen days after publication of the Federal Register notice. *See* 28 U.S.C. § 1581(i); *SKF USA Inc. v. United States*, 31 CIT 405, 409-10 (2007) ("*SKF I*") (citing *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1304-05 (Fed. Cir. 2004), and *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1002-03 (Fed. Cir. 2003)).[1] The court reviews the fifteen-day policy as provided in 5 U.S.C. § 706 (2006). 28 U.S.C. § 2640(e) (2006). Under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, the court must "hold unlawful and set

---

[1] The court held in *SKF USA Inc. v. United States* that jurisdiction over a claim challenging the previous fifteen-day policy does not fall under 28 U.S.C. § 1581(c), explaining that "[t]he language in the Federal Register notice to which plaintiffs direct the court's attention is a statement of a *present* intention on the part of Commerce to take, within fifteen days of the publication of the Final Results, the *future* action of instructing Customs to liquidate, in accordance with the Final Results, the affected entries." *SKF USA Inc. v. United States*, 31 CIT 405, 409 (2007) ("*SKF I*"). The court reached the same conclusion regarding a claim challenging the Department's revised fifteen-day policy. *SKF USA Inc. v. United States*, 33 CIT __, __, Slip Op. 09-121, at 17-18 (Oct. 27, 2009) ("*SKF III*").

aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

A.  Commerce Lawfully Sought to Obtain the Unaffiliated Supplier's Data on Cost of Production

During the review, Commerce requested that all respondents report COP data for imports of subject bearings. *See Dep't of Commerce, Request for Information* (Aug. 14, 2007) (Gen. Iss. AR Doc. 22).  On September 4, 2007, SKF GmbH responded by submitting its own acquisition costs for bearings it obtained from an unrelated supplier. *Letter from Steptoe & Johnson LLP to Commerce* (Sept. 4, 2007) (Admin. R. Doc. No. 90).  On November 6, 2007, the Department requested that SKF GmbH "report actual COP and CV data from the unaffiliated supplier which was the largest supplier, measured by the value of SKF's [*i.e.*, SKF GmbH's] U.S. sales." *Mem. from Program Manager, AD/CVD Enforcement, to Dir., Office 5, AD/CVD Enforcement* 2 (Nov. 6, 2007) (Admin. R. Doc. No. 105).  Commerce's rationale was that a substantial portion of SKF GmbH's U.S. sales and some of its home market sales were sales of merchandise produced by unaffiliated suppliers. *Id.*

SKF objected that Commerce was departing from its previous methodology of relying on SKF GmbH's acquisition costs in determining the constructed value for subject bearings.[2] *See*

---

[2]  During the fifteenth administrative reviews (2003-2004), Commerce first announced that, when appropriate in future reviews, it would request that all respondents who bought and resold bearings from unaffiliated producers provide COP data obtained from the unaffiliated producers. *See* Br. in Supp. of SKF's Rules 56.1 & 56.2 Mot. for J. upon the Agency R. 8-9 ("Pls.' Br.") (citing to Pls.' Br., Attach 3, at 4-6 (setting forth *Mem. from Dir., Office 5, AD/CVD Enforcement, to Acting Deputy Assistant Sec'y for Imp. Admin.* (May 6, 2005))).  Subsequently, during the seventeenth reviews (2005-2006), Commerce first requested that SKF GmbH obtain COP data from its unaffiliated supplier because Commerce determined that such data would have a significant impact on margin calculations and there was no comparison-market sale of the foreign like product available for margin-calculation purposes in this reseller transaction.  Pls.'

(continued...)

*Letter from Steptoe & Johnson LLP to Commerce* (Nov. 14, 2007) (Admin. R. Doc. No. 107).

Commerce concluded that "we continue to find that requiring cost data from unaffiliated

suppliers produces more accurate COP and CV information, as acquisition costs alone do not

capture all of the actual costs of the manufacturer supplying the bearings to the reseller."

*Decision Mem.* 59.

Plaintiffs argue that it was unlawful for Commerce to depart from the methodology used

in sixteen prior sets of reviews and, specifically, that "Commerce did not provide compelling

reasons for changing the methodology in the 17th review, continued to not provide compelling

reasons in the 18th review and has failed to support its methodology change with substantial

evidence." *See* Br. In Supp. of SKF's Rules 56.1 & 56.2 Mot. for J. upon the Agency R. 9 ("Pls.'

Br."). The court rejected this argument when SKF raised it in contesting the final results of the

seventeenth reviews, concluding that SKF, in arguing that compelling reasons were required,

misstated the burden that an agency must meet to justify a change in established practice. *SKF*

*USA v. United States*, 33 CIT at __, Slip Op. 09-121, at 9 (Oct. 27, 2009) ("*SKF III*").

Commerce generally is free to change its methodology provided that it states its rationale for

doing so and the stated rationale is reasonable. *See Koyo Seiko Co. v. United States*, 36 F.3d

1565, 1575 (Fed. Cir. 1994). In adhering to its changed methodology, Commerce reasoned that

"we continue to find that requiring cost data from unaffiliated suppliers produces more accurate

COP and CV information, as acquisition costs alone do not capture all of the actual costs of the

_____

[2](...continued)
Br., Attach 16, at 47 (setting forth *Issues & Decision Mem. for the Antidumping Duty Admin.*
*Reviews of Ball Bearings & Parts Thereof from France, Germany, Italy, Japan, Singapore, & the*
*United Kingdom for the Period of Review May 1, 2005, through April 30, 2006* (Oct. 4, 2007)).

manufacturer supplying the bearings to the reseller." *Decision Mem.* 59.  Although Commerce

has authority to use acquisition cost, it is not required to do so in every case.  As the court stated

in *SKF III*,

> [t]he statute expressly includes in the constructed value calculation "the cost of
> materials and fabrication or other processing of any kind" used in producing the
> subject merchandise.  19 U.S.C. § 1677b(e)(1).  Where acquisition cost is used in
> the normal value calculation, the cost of production is not determined separately
> from the elements of profit and general expenses.  Under the plain meaning of
> § 1677b(e)(1), Commerce has authority to examine the actual cost of production.

*SKF III*, 33 CIT at __, Slip Op. 09-121, at 9.  On the record of this case as well, the court

concludes that Commerce acted within its authority in requesting the COP data of the unaffiliated

supplier.

Plaintiffs also argue that, under 19 U.S.C. § 1677b(f)(2) and (f)(3), Commerce may

disregard costs, including acquisition costs, provided by a respondent only between *affiliated*

*persons* when such transactions were *not at arm's length* or otherwise *did not reflect market*

*value* for the good or major input purchased.  Pls.' Br. 9-12.  The court also rejected this

argument in *SKF III*, on the ground that "[t]he two statutory provisions plaintiffs cite in support

of this argument address the question of when transactions between *affiliated* persons may be

disregarded and thus do not bear on the issue under consideration."  *SKF III*, 33 CIT at __, Slip

Op. 09-121, at 10.  Neither provision requires the Department to use acquisition cost, rather than

actual production cost, in determining constructed value simply because the acquisition cost was

based on prices negotiated between *unaffiliated* persons.

Citing various other provisions within 19 U.S.C. § 1677b, SKF argues that Commerce

must use acquisition cost data because these were data of the exporter under examination,

whereas the COP data were data of a producer that was not a party to the reviews.  Pls.'

Br. 12-13 (citing 19 U.S.C. § 1677b(b)(3), (e)(2)(A) & (B)(1), and (f)).  As the court stated in

*SKF III*,

> [n]one of the provisions relied upon by SKF addresses the narrow question of
> whether Commerce could use the data of a non-party to the proceeding in
> determining cost of production for purposes of § 1677b(e)(1), under which, in
> contrast to various other provisions in the section, Commerce is not limited to the
> use of information provided by the party under examination or the use of
> information provided by other parties to the proceeding.

*SKF III*, 33 CIT at __, Slip Op. 09-121, at 10.  The statute provides as a general rule that for

purposes of § 1677b(e), "[c]osts shall normally be calculated based on the records of the exporter

or producer of the merchandise."  19 U.S.C. § 1677b(f)(1)(A).  In 19 U.S.C. § 1677(28),

Congress defined the term "exporter or producer" generally to mean "the exporter of the subject

merchandise, the producer of the subject merchandise, or both where appropriate."  19 U.S.C.

§ 1677(28).  The same provision also states that

> [f]or purposes of Section 1677b of this title, the term "exporter or producer"
> includes both the exporter of subject merchandise and the producer of the same
> subject merchandise to the extent necessary to accurately calculate the total
> amount incurred and realized for costs, expenses, and profits in connection with
> production and sale of that merchandise.

*Id.*  Further, the Statement of Administrative Action accompanying the Uruguay Round

Agreements Act ("SAA") clarifies that "[t]he purpose of [19 U.S.C. § 1677(28)], which is

consistent with current Commerce practice, is to clarify that where different firms perform the

production and selling functions, Commerce may include the costs, expenses, and profits of each

firm in calculating cost of production and constructed value."  *The Uruguay Round Agreements*

*Act, Statement of Administrative Action*, H.R. Doc. No. 103-316 (Vol. 1), at 835 (1994), *as*

*reprinted in* 1994 U.S.C.C.A.N. 4040, 4172 ("*SAA*").  Nothing in the statute confines

Commerce's inquiry to the COP records of a party to the proceeding.

Finally, plaintiffs argue that Commerce does not have "'a long standing practice' of using

actual production costs of unaffiliated suppliers" because "Commerce has not consistently

applied this requirement in other proceedings" and "instances in which Commerce imposed this

requirement are easily distinguishable from the [antifriction bearing] reviews."  Pls.' Br. 13-14.

Plaintiffs argue, specifically, that Commerce has a practice of requesting and using actual COP

data from an unaffiliated party only in reviews involving "agricultural products" and not those

involving "non-agricultural products."  *See id.* at 14-15.  The court finds this line of argument

meritless.  First, the court finds nothing in the statute or Commerce's regulations requiring that

Commerce treat agricultural producers differently from non-agricultural producers for purposes

of determining constructive value, and plaintiffs cite to no such authority.  With respect to

plaintiffs' argument concerning an alleged Commerce practice, for which plaintiffs cite various

administrative precedents,[3] the court notes that Commerce, on at least one occasion, has

requested actual COP data from a non-agricultural producer who was unaffiliated with a

respondent in an administrative review.  *See Elemental Sulfur From Canada; Final Results of*

*Antidumping Finding Admin. Review*, 61 Fed. Reg. 8239 (Mar. 4, 1996).

---

[3] *Notice of Final Determination of Sales at Less Than Fair Value; Honey From Argentina*, 66 Fed. Reg. 50,611 (Oct. 4, 2001); *Final Determination of Sales at Less Than Fair Value: Fresh & Chilled Atlantic Salmon from Norway*, 56 Fed. Reg. 7661 (Feb. 25, 1991); *Notice of Final Results of Antidumping Duty Admin. Review: Individually Quick Frozen Red Raspberries From Chile*, 70 Fed. Reg. 6618 (Feb. 8, 2005).

Finding unconvincing the various arguments SKF raises to the contrary, the court concludes that the Department acted according to law in seeking to obtain the COP data of the unaffiliated supplier.

B.  Commerce Acted Contrary to Law in Using an Inference Adverse to SKF GmbH

Plaintiffs claim that Commerce unlawfully invoked facts otherwise available and unlawfully drew an adverse inference for the untimely submission of the COP data that Commerce had requested.  Pls.' Br. 16.  Defendant responds that due to the failure of the unaffiliated supplier to submit the COP data prior to the deadline for submission, Commerce was authorized, first, to use facts otherwise available under 19 U.S.C. § 1677e(a) (2006) and, second, to invoke an adverse inference in accordance with 19 U.S.C. § 1677e(b) due to the unaffiliated supplier's failure to cooperate.  Def.'s Opp'n to Pls.' Mot. for J. upon the Agency R. 18-30 ("Def.'s Resp.").  The court concludes that Commerce had the authority to resort to facts otherwise available under 19 U.S.C. § 1677e(a) because the requested COP information was not timely submitted.  However, the court also concludes that Commerce acted contrary to law in its choice of facts otherwise available and in drawing an adverse inference under § 1677e(b).

1.  Commerce Acted Within its Authority in Determining that the Affiliated Supplier's COP Data Was Not Timely Submitted

The following facts, as disclosed by record documents in this case, are not in dispute. Pursuant to Commerce's request that SKF GmbH obtain COP information from its unaffiliated supplier, SKF's counsel sent a letter to counsel for the supplier requesting that the COP data be submitted to Commerce.  *Letter from Steptoe & Johnson LLP to Commerce* 5 (Nov. 14, 2007) (Admin. R. Doc. No. 107).  SKF then sent a letter to Commerce reporting that it had contacted its

unaffiliated supplier but that it was having difficulty with respect to Commerce's information request. *Id.* SKF's letter explained that

> in previous oral discussions and correspondence between counsel for SKF and counsel for [the unaffiliated supplier,] . . . counsel for [the unaffiliated supplier] stated that "it would not be in a position to provide SKF with any such POR 18 information." While SKF now has reiterated its request to [the unaffiliated supplier], the Department should recognize that it appears highly unlikely that such information will be forthcoming and it will not otherwise be on the record in this proceeding.

*Id.* On November 28, 2007, Commerce sent a request for the information directly to the suppliers' counsel, requesting that the information be submitted to Commerce by Thursday, January 3, 2008. *See Letter from Commerce to Grunfeld Desiderio* (Nov. 28, 2007) (Admin. R. Doc. No. 112). When the due date arrived, Commerce had yet to receive the data and had not been contacted by the supplier's counsel for an extension of time. *See Letter from Commerce to Grunfeld Desiderio* (Jan. 31, 2008) (Admin. R. Doc. No. 136).

On Monday, January 7, 2008, the Department's analyst responsible for reviewing SKF GmbH's information, Ms. Janis Kalnis, telephoned the unaffiliated supplier's counsel to note the passing of the deadline and to inquire whether the supplier intended to submit the requested COP data, to which the supplier's counsel responded that "it did indeed intend to submit the requested data" and that Commerce would receive it the following day. *See Letter from Grunfeld Desiderio to Commerce* 2 (Feb. 1, 2008) (Admin. R. Doc. No. 137). The supplier's counsel submitted the requested COP data to Commerce the following day, January 8, 2008, three business days after the deadline. *See Letter from Grunfeld Desiderio to Commerce* (Jan. 8, 2008) (Admin. R. Doc. No. 126). Despite having made the effort to contact counsel for the unaffiliated supplier and having secured an understanding that the information would be submitted the

following day, Commerce rejected the COP data submission as late-filed information. *See Letter from Commerce to Grunfeld Desiderio* (Jan. 31, 2008) (Admin. R. Doc. No. 136). The supplier's counsel submitted an explanation for the lateness of the submission and requested that Commerce reconsider its rejection. *See Letter from Grunfeld Desiderio to Commerce* (Feb. 1, 2008) (Admin. R. Doc. No. 137). Commerce responded by affirming its decision to exclude the submitted COP information from the record. *See Letter from Commerce to Grunfeld Desiderio* (Mar. 3, 2008) (Admin. R. Doc. No. 143).

Subsection (a) of § 1677e allows Commerce to use "the facts otherwise available" when "necessary information is not available on the record" or when any of four conditions specified in subparagraph (a)(2) is met, including, according to subparagraph (a)(2)(B), the condition in which a person fails to provide requested information by the deadline for submission. 19 U.S.C. § 1677e(a).[4] The statute provides, in that event, that Commerce shall, subject to § 1677m(d), "use the facts otherwise available in reaching the applicable determination." 19 U.S.C. § 1677e(a). In the Final Results, Commerce concluded that the late submission of COP data satisfied the condition of subparagraph (a)(2)(B) as a failure to provide requested information by the applicable deadline. *See Final Results*, 73 Fed. Reg. at 52,824.

---

[4] The four conditions apply to situations in which an interested party or any other person:
(A) withholds information that has been requested by the administering authority . . . under this subtitle,
(B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections (c)(1) and (e) of section 1677m of this title,
(C) significantly impedes a proceeding under this subtitle, or
(D) provides such information but the information cannot be verified as provided in section 1677m(i) of this title . . . .
19 U.S.C. § 1677e(a)(2) (2006).

As noted previously, the record shows that Commerce itself requested that counsel for the unaffiliated supplier submit the COP data to Commerce no later than January 3, 2008, *see Letter from Commerce to Grunfeld Desiderio* (Nov. 28, 2007) (Admin. R. Doc. No. 112), and that the information was submitted on January 8, 2008, three business days after the deadline. *See Letter from Grunfeld Desiderio to Commerce* (Jan. 8, 2008) (Admin. R. Doc. No. 126). Commerce determined under 19 U.S.C. § 1677e(a) that this information was untimely submitted. *See Letter from Commerce to Grunfeld Desiderio* (Jan. 31, 2008) (Admin. R. Doc. No. 136). Defendant argues that "there is no requirement in the statute that Commerce accept data which is late, regardless of whether data was submitted months after the deadline or three days late." Def.'s Resp. 23. Subject to exceptions not here applicable, the statute plainly provides with respect to late-filed information that Commerce "shall . . . use the facts otherwise available in reaching the applicable determination under this subtitle." 19 U.S.C. §§ 1677e(a), 1677m(d). Commerce has broad authority to set, and extend, its deadlines for submission of requested information, but on the uncontested facts of this case it acted within its authority in deeming the COP data an untimely submission.

### 2.  Commerce's Use of an Adverse Inference When Selecting From Among the Facts Otherwise Available Was Based on an Impermissible Construction of the Statute and Was an Abuse of Discretion

When selecting from among the facts otherwise available, Commerce "may use an inference that is adverse to the interests of" an "interested party" that "has failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b). Based on a finding that the unaffiliated supplier failed to cooperate as required by

19 U.S.C. § 1677e(b), Commerce applied, as an adverse inference, a rate of 17.66% to sales of

subject bearings that SKF GmbH purchased from its unaffiliated supplier. *Decision Mem.* 57.

The Final Results do not state a finding that SKF GmbH or any other of the plaintiffs

failed to respond to the best of its ability in responding to an information request by Commerce.

Nor is such a finding stated in the Decision Memorandum, which the Final Results incorporate

by reference.[5]  Thus, the only finding of a failure to cooperate on which Commerce may be

considered to have invoked its authority under § 1677e(b) is that of the unaffiliated supplier,

which did not act to the best of its ability in submitting the COP data.[6]  *See Final Results*, 73 Fed.

Reg. at 52,824 (in which Commerce found it "appropriate to use facts otherwise available with

an adverse inference for certain U.S. sales made by SKF Germany for which SKF Germany was

---

[5] Had Commerce actually made a finding that any SKF entity failed to cooperate to the best of its ability with respect to the request for the COP data, it is unlikely that such a finding could have been upheld as supported by substantial evidence on the record of this proceeding. The record demonstrates not only that SKF GmbH and the supplier were unaffiliated (and were in fact competing bearing manufacturers), but also that plaintiffs engaged in communications with counsel for the unaffiliated supplier, made and reiterated a request for the COP data, and informed Commerce after learning that the supplier likely would refuse to cooperate. Moreover, the record evidence establishes that the untimely submission of the COP data, upon which Commerce based its finding of a failure to cooperate under 19 U.S.C. § 1677e(b), occurred after Commerce had taken it upon itself to request that the unaffiliated supplier submit the COP data directly to Commerce.

[6] In its response to SKF's Rule 56.2 motion for judgment upon the agency record, defendant implied that Commerce based its decision to use an adverse inference partly on SKF's failure to cooperate as required by 19 U.S.C. § 1677e(b). *See, e.g.*, Def.'s Opp'n to Pls.' Mot. for J. upon the Agency R. 19 ("Def.'s Resp.") ("SKF and its supplier . . . failed to provide information requested by Commerce by the deadline for submission. . . ."), 22 ("SKF did not request assistance and did not request an extension of any deadline or a modification of the requirements."). At oral argument on plaintiffs' motion for judgment upon the agency record, counsel for defendant argued, similarly, that "Commerce based the rate also on SKF's actions." Tr. 47, Sept. 23, 2009. However, in response to questioning from the court at the oral argument, counsel for defendant conceded that Commerce made no finding that SKF had failed to cooperate to the best of their ability. *Id.* at 47, 49.

not the producer and for which the producer failed to provide cost-of-production information by the deadline for submission of the information"); *see also Decision Mem.* 56 (finding that "lack of cooperation by the producer of the subject merchandise has made it impossible for the Department to calculate the actual and accurate COP of the subject merchandise for the unaffiliated supplier/producer under section 773(b) of the Act"). The unaffiliated supplier was not a party to the administrative reviews proceeding and, therefore, was not in a position to be assigned a margin reflecting an adverse inference. The 17.66% rate Commerce chose was adverse to SKF GmbH, as Commerce acknowledged. *See Decision Mem.* 57 (stating that "this AFA [*i.e.*, "adverse facts available"] rate is the highest rate ever calculated for SKF Germany in any segment of the proceeding," from the third period of administrative reviews of subject bearings). Commerce's discussion in the Decision Memorandum indicates that the Department's motivation was to induce future cooperation of the unaffiliated supplier by using a rate that was adverse to the supplier's customer, SKF GmbH. *Id.*

This case raises the issue of whether Commerce has authority under 19 U.S.C. § 1677e(b) to use an inference that is adverse to a party to the proceeding absent a factual finding that such party "failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b). The court concludes that Commerce lacks this authority. Further, the court concludes that even were it to presume that such authority could be invoked on some hypothetical set of facts, the use of an inference adverse to SKF GmbH, on the uncontested record facts of this case, was an abuse of the discretion provided to Commerce by § 1677e(b).

The court reviews Commerce's construction of the statute it is charged with administering according to the deference required by *Chevron U.S.A. Inc. v. Natural Resources*

*Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984). *See Pesquera Mares Australes Ltda. v.*

*United States*, 266 F.3d 1372, 1379-82 (Fed. Cir. 2001). Under *Chevron*, the court first must

consider "whether Congress has directly spoken to the precise question at issue. If the intent of

Congress is clear, that is the end of the matter; for the court, as well as the agency, must give

effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. If,

however, "the statute is silent or ambiguous with respect to the specific issue, the question for the

court is whether the agency's answer is based on a permissible construction of the statute." *Id.*

at 843.

As defendant points out, the plain language of 19 U.S.C. § 1677e(b) states that

Commerce may use an inference that is adverse to an "interested party" who fails to cooperate,

and the statute does not state that the interested party must be a party to the proceeding.[7] *See*

Def.'s Resp. 27-30. Defendant also is correct in pointing out that the term "interested party" is

defined by 19 U.S.C. § 1677(9) of the statute to include any "foreign manufacturer, producer, or

exporter . . . of subject merchandise." *See* Def.'s Resp. 27 (citing 19 U.S.C. § 1677(9) and

stating that "[p]ut simply, the actions of an interested party, which includes the producer pursuant

to 19 U.S.C. § 1677(9), may result in Commerce's application of facts available"). Because

---

[7] In 19 U.S.C. § 1677e(b), the statute provides:
If the administering authority or the Commission (as the case may be) finds that
*an interested party has failed to cooperate* by not acting to the best of its ability to
comply with a request for information from the administering authority or the
Commission, the administering authority or the Commission (as the case may be),
in reaching the applicable determination under this subtitle, *may use an inference
that is adverse to the interests of that party* in selecting from among the facts
otherwise available.
19 U.S.C. § 1677e(b) (emphasis added).

§ 1677e(b) does not expressly require that the non-cooperating party against whom an inference is drawn also be a party to the proceeding, the court concludes that the statute is silent or ambiguous on the precise question posed by this case. However, in applying the second step of the analysis required by *Chevron*, the court is unable to accept Commerce's construction of the statute as a reasonable one.

Allowing an interested party's failure to cooperate to affect adversely the dumping margin of another interested party who is a party to the proceeding, about whom Commerce did *not* make a finding of non-cooperation, violates the Department's obligation to treat fairly every participant in an administrative proceeding. As is any government agency, Commerce is under a duty to accord fairness to the parties that appear before it. Although 19 U.S.C. § 1677e(b) does not expressly state that Commerce may not adversely affect a party to a proceeding based upon another interested party's failure to cooperate, a construction permitting such an absurd result makes a mockery of any notion of fairness. In the specific context of the antidumping laws, a party that did not fail to meet its obligation to cooperate, as imposed by § 1677e(b), is entitled by § 1675(a) and related provisions of the antidumping law to have its margin determined accurately and according to the relevant information on the record of the administrative review. *See* 19 U.S.C. § 1675(a)(1)-(2) (requiring generally that Commerce determine the amount of antidumping duty according to normal value and export price or constructed export price of each entry of subject merchandise); *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) (stating that "the basic purpose of the [antidumping] statute [is] determining current margins as accurately as possible"). Yet, Commerce openly acknowledged that it chose the 17.66% rate because that rate was adverse to SKF GmbH. *See Decision Mem*. 57 (choosing "the

highest rate ever calculated for SKF Germany in any segment of the proceeding" from the third

period of administrative reviews of subject bearings).  That Commerce alluded to its motivation

to induce future cooperation of the unaffiliated supplier does not change the fact that the rate

chosen was, and was intended to be, adverse to SKF GmbH.  *Id.*  The court cannot accept a

construction of 19 U.S.C. § 1677e(b) under which the party who suffers the effect of the adverse

inference is not the party who failed to cooperate.

The SAA is informative on the correct understanding of the congressional purpose

underlying § 1677e(b).  The SAA instructs that "[w]here a party has not cooperated, Commerce

and the Commission may employ adverse inferences about the missing information to ensure that

the party does not obtain a more favorable *result* by failing to cooperate than if it had cooperated

fully."  *SAA* at 870, *as reprinted in* 1994 U.S.C.C.A.N. at 4199 (emphasis added).  The

Department's construction of § 1677e(b) in this case is antithetical to the congressional purpose.

Under that construction, a party to the proceeding can obtain, paradoxically, a "result," *e.g.*, a

margin or deposit rate, that is less favorable than that which would have resulted "if it had

cooperated fully," even though Commerce never found that the party did not "cooperate fully" as

required by § 1677e(b).  *Id.*

For the reasons discussed above, the court rejects defendant's construction of 19 U.S.C.

§ 1677e(b) as impermissible, both because it is contrary to basic principles of fairness and

because it is inconsistent with the fundamental purpose of the antidumping law.  However, even

were the court to conclude that such a construction could be reasonable when applied to some

hypothetical set of facts, it still would be compelled to conclude that, under the uncontested facts

of this case, Commerce abused the discretion that is indicated by the use of the word "may" in

§ 1677e(b).  *See* 19 U.S.C. § 1677e(b) (providing that "the administering authority or the Commission (as the case may be), in reaching the applicable determination under subtitle, *may* use an inference that is adverse . . ." (emphasis added)).  Commerce must exercise that discretion in order to achieve the underlying purpose of § 1677e(b), as explained by the SAA.  In this case, Commerce intended to, and did, adversely affect SKF GmbH, even though the apparent target of the action taken under § 1677e(b) was the unaffiliated supplier, for whom Commerce hoped, through the use of an inference adverse to that supplier's customer, to "induce cooperation in the future."  *Decision Mem.* 57.  Although inducing the cooperation of interested parties is a worthwhile objective, Commerce may not further this objective by abusing its discretion.

Although Commerce, for reasons discussed earlier, had discretion to refuse to admit the COP data of the unaffiliated supplier to the record due to the untimely submission, once it had done so, it placed itself in the position of having to determine the constructed value of subject merchandise according to other record information, including the "facts otherwise available."  As stated in the SAA, when invoking 19 U.S.C. § 1677e(a), "Commerce and the Commission must make their determinations based on all evidence of record, weighing the record evidence to determine that which is *most probative of the issue under consideration*."  *SAA* at 869, *as reprinted in* 1994 U.S.C.C.A.N. at 4198 (emphasis added).  The SAA adds that because it is impossible to compare facts available with missing information, Commerce need not prove that the facts selected are the best alternative facts.  *Id.* at 869-70, *as reprinted in* 1994 U.S.C.C.A.N. at 4198-99.  Nevertheless, "the facts available are information or inferences which are reasonable to use under the circumstances."  *Id.* at 869, *as reprinted in* 1994 U.S.C.C.A.N. at 4198.  On the record as it stood at the time Commerce rejected the untimely-submitted COP data, the record

information and "facts otherwise available" included the record data pertaining to the acquisition

costs incurred by SKF GmbH, a source of information that Commerce had determined was

reasonable and appropriate for determining constructed value in numerous previous reviews of

the antidumping duty order. *See Letter from Steptoe & Johnson LLP to Commerce* (Sept. 4,

2007) (Admin. R. Doc. No. 90) (SKF GmbH submitted acquisition costs for subject bearings in

response to Commerce's initial request for information). Commerce also had discretion to re-

admit to the record, and consider using as facts otherwise available, the previously-rejected COP

data, which arrived only three business days late, a delay that was so short that it must be

presumed to be immaterial to the timely completion of the review. Both the COP data and the

acquisition cost data had the virtue of bearing a probative relationship to the subject merchandise

Commerce was attempting to value.[8] The same cannot be said for the information Commerce

actually chose as facts otherwise available, which was information underlying the highest rate

ever calculated for SKF GmbH in any segment of the proceeding, from the third period of

administrative reviews of subject bearings. Commerce chose this rate not because it was

probative on the constructed value determination, but because it would be adverse to SKF

GmbH, apparently on the theory that the unaffiliated supplier would be influenced in the future to

avoid similar such harm to its own customer. On remand, Commerce must recalculate SKF

GmbH's margin after redetermining the constructed value of the subject merchandise SKF

---

[8] Defendant-Intervenor Timken maintains that the COP data pertained to the previous period of review. *See* Resp. of the Timken Co. to the Rule 56.2 Mot. of SKF USA Inc., et al. 7 ("Def.-Intervenor's Resp."). However, Commerce did not reject the information as unresponsive to its request and instead rejected it solely on the ground of untimely submission. Even if Timken's assertion is correct, the information still would have some probativity with respect to a determination of constructed value.

GmbH obtained from the unaffiliated supplier. Absent a finding of fact that SKF GmbH failed to cooperate in fulfilling the Department's request for information, Commerce must redetermine the constructed value according to the available record evidence, without using an inference adverse to SKF GmbH.

### C. Plaintiffs' Arguments Challenging Zeroing Conflict with Controlling Precedent

Plaintiffs challenge the Department's use of zeroing in calculating the weighted-average dumping margin for SKF GmbH. Pls.' Br. 35-38. To calculate a weighted-average dumping margin in an administrative review, Commerce first must determine two values for each entry of subject merchandise falling within the period of review: the normal value and the export price ("EP") (or the constructed export price ("CEP") if the EP cannot be determined). 19 U.S.C. § 1675(a)(2)(A)(i). Commerce then determines a margin for each entry by taking the amount by which the normal value exceeds the EP or CEP. 19 U.S.C. §§ 1675(a)(2)(A)(ii), 1677(35)(A). If normal value does not exceed EP or CEP, Commerce, when determining a weighted-average dumping margin, assigns a value of zero, not a negative value, to the entry. Finally, Commerce aggregates these values to calculate a weighted-average dumping margin. 19 U.S.C. § 1677(35)(B).

Plaintiffs argue that "zeroing" is neither required by the antidumping statute nor consistent with the statute when considered in its entirety. *See* Compl. ¶ 14. Plaintiffs insist that "Commerce legally erred in calculating the weighted-average dumping margins, assessment rates and deposit rates for SKF by not giving full credit to sales made to or in the United States at prices above normal value" and thereby unlawfully distorted the weighted-average dumping margins. Compl. ¶ 14; *see* Pls.' Br. 7 (stating that the weighted-average margins assigned to plaintiffs of

11.09% on ball bearings from France, 4.15% on ball bearings from Germany, and 7.05% on ball bearings from Italy, would have been -13.17%, -25.38%, and -38.04%, respectively, if calculated without zeroing).

Plaintiffs also argue that Commerce must interpret the antidumping statute consistently with international obligations of the United States, as set forth in decisions of the World Trade Organization's ("WTO") Dispute Settlement Body, under which zeroing has been rejected. Compl. ¶ 16; Pls.' Br. 35-38; *see* Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade 1994, Apr. 15, 1994, Marrakesh Agreement Establishing the World Trade Organization, Annex 1A, 1868 U.N.T.S. 201 (1994) ("Antidumping Agreement"). Relying, at least in part, on the doctrine originating in *Murray v. The Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804), plaintiffs argue that the U.S. Government should comply with decisions of the WTO which have found "the U.S. zeroing practice to be inconsistent with the International Antidumping Agreement." Pls.' Br. 37. Plaintiffs point to statements by the United States expressing intent to take action on the zeroing issue. *Id.* Plaintiffs also point out that since the last period of reviews of subject bearings, "Commerce changed its methodology in antidumping investigations with respect to the calculation of the weighted-average margin in average-to-average comparisons to no longer zero out the effect of sales sold above fair value." *Id.* at 36 (citing to *Implementation of the Findings of the WTO Panel in United States Antidumping Measure on Shrimp from Ecuador: Notice of Determination Under Section 129 of the Uruguay Round Agreements Act & Revocation of the Antidumping Duty Order on Frozen Warmwater Shrimp from Ecuador*, 72 Fed. Reg. 48,257 (Aug. 23, 2007)); *see also Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margins During An Antidumping*

*Duty Investigation: Final Modification*, 71 Fed. Reg. 77,722 (Dec. 27, 2006); *Antidumping*

*Proceedings; Calculation of the Weighted-Average Dumping Margins In Antidumping*

*Investigations: Change in Effective Date of Final Modification*, 72 Fed. Reg. 3783 (Jan. 26, 2007)

(effective Feb. 22, 2007).  Plaintiffs add that "Commerce implemented this new methodology in

several investigations, resulting in the revocation of orders against nine companies."  Pls.' Br. 36.

The court rejected similar arguments by SKF challenging the application of Commerce's

zeroing methodology in administrative reviews.  *See SKF III*, 33 CIT at __, Slip Op. 09-121,

at 14-16; *SFK USA Inc. v. United States*, 33 CIT__, __, Slip Op. 09-32, at 7-16 (Apr. 17, 2009)

("*SKF II*").  *SKF III* and *SKF II* affirmed the Department's use of zeroing to determine plaintiffs'

weighted-average dumping margin in the final results of administrative reviews for the previous

two period of reviews, May 1, 2005 through April 1, 2006 and May 1, 2004 through April 1,

2005.  *See SKF III*, 33 CIT at __, Slip Op. 09-121, at 14-16; *SFK II*, 33 CIT at __, Slip Op. 09-32,

at 7-16.  The court also addressed the reasons why recent developments related to WTO decisions

do not provide a basis on which the court may depart from binding precedent of the Court of

Appeals, which upheld as reasonable the Department's statutory interpretation that zeroing in

administrative reviews is permissible.  *See Union Steel v. United States*, 33 CIT __, __, Slip Op.

09-105, at 17-19 (Sept. 28, 2009) (relying upon *Corus Staal BV v. United States*, 502 F.3d 1370

(Fed. Cir. 2007), which upheld as reasonable Commerce's use of zeroing in an administrative

review of an antidumping duty order on hot-rolled steel, and *NSK Ltd. v. United States*, 510 F.3d

1375 (Fed. Cir. 2007), which rejected the argument that use of zeroing should be held unlawful

based on a decision of the WTO Dispute Settlement Body and on statements by the United States

indicating that the United States would comply with that decision).  The Court of Appeals

concluded that

> "until Commerce abandons zeroing in administrative reviews such as this one, a
> remand in this case would be unavailing.  Therefore, because Commerce's zeroing
> practice is in accordance with our well-established precedent, *until Commerce*
> *officially abandons the practice pursuant to the specified statutory scheme, we*
> *affirm its continued use in this case.*"

*Union Steel*, 33 CIT at __, Slip Op. 09-105, at 18-19 (quoting *NSK*, 510 F.3d at 1380) (emphasis

added).  Plaintiffs have failed to advance a new argument directed at Commerce's use of zeroing

that is not foreclosed by the binding precedents of the Court of Appeals.  For these various

reasons, the court must affirm the Department's determination to apply zeroing in the

administrative reviews at issue in this case.

### D.  Commerce's Policy, Rule, or Practice of Issuing Liquidation Instructions Fifteen Days after Publication of the Final Results of an Administrative Review Is Contrary to Law

Plaintiffs' final claim challenges the Department's decision to issue liquidation

instructions to Customs fifteen days after the publication of the Final Results.  Pls.' Br. 2.  In the

notice setting forth the Final Results, published on September 11, 2008, Commerce stated that

"[w]e intend to issue appropriate assessment instructions directly to CBP 15 days after publication

of these final results of reviews."  *Final Results*, 73 Fed. Reg. at 52,825.  In stating that

Commerce would issue the instructions "15 days after publication," the Federal Register notice

described a procedure at variance with a 2002 policy statement, in which Commerce said it would

issue liquidation instructions to Customs, pursuant to administrative reviews conducted under

19 U.S.C. § 1675(a)(1) and (a)(2), "within 15 days of publication of the final results of review in

the *Federal Register* or any amendments thereto."[9]  *Announcement Concerning Issuance of Liquidation Instructions Reflecting Results of Admin. Reviews*, Aug. 9, 2002, http://ia.ita.doc.gov/download/liquidation-announcement.html (updated Aug. 14, 2002) (last visited Dec. 21, 2009) ("*Announcement*"); *see* Pls.' Br., Attach. 14.

Plaintiffs commenced this action on September 23, 2008, twelve days after publication of the Final Results.  Plaintiffs moved for a preliminary injunction on September 26, 2008 to prohibit Customs from liquidating plaintiffs' entries made during the period of review.  SKF's Consent Mot. for a Prelim. Inj. to Enjoin Liquidation of Entries.  The United States consented to issuance of a preliminary injunction before the end of the fifteen-day period, and this court granted plaintiffs' motion for a preliminary injunction days later.  Order 1, Sept. 30, 2008.  Under the preliminary injunction order, liquidation of entries of plaintiffs' merchandise will remain enjoined during the pendency of this litigation, including all remands and appeals.  *Id.*

In *SKF II*, the court held that Commerce's previous 2002 policy of issuing liquidation instructions *within* fifteen days of publication violated 19 U.S.C. § 1516a(c)(2) "because that

---

[9] In its entirety, the 2002 announcement provided as follows:

The Department of Commerce announces that, effective immediately, it intends to issue liquidation instructions pursuant to administrative reviews conducted under section 751 of the Tariff Act of 1930, as amended [19 U.S.C. § 1675], to the U.S. Customs Service within 15 days of publication of the final results of review in the *Federal Register* or any amendments thereto.  This announcement applies to reviews conducted under sections 751(a)(1) and (2) of the Tariff Act.

If you have any questions, please contact the staff member identified in the notice of final results of review published in the *Federal Register*.

*Announcement Concerning Issuance of Liquidation Instructions Reflecting Results of Admin. Reviews*, Aug. 9, 2002, http://ia.ita.doc.gov/download/liquidation-announcement.html (updated Aug. 14, 2002) (last visited Dec. 21, 2009) ("*Announcement*"); *see* Pls.' Br., Attach. 14.

policy allows liquidation to occur almost immediately upon publication rather than providing a minimally reasonable time during which a party may seek to obtain an injunction against liquidation." *SKF II*, 33 CIT at __, Slip Op. 09-32, at 27. The court determined that the previous 2002 policy "induces an absurd, and unnecessary, 'race to the courthouse' that burdens impermissibly the right of a prospective plaintiff to seek the injunction that Congress contemplated in enacting § 1516a(c)(2) and frustrates the purpose of that provision." *Id.* at __, Slip Op. 09-32, at 24. In *SKF III*, the court held that the Department's adherence to a new policy, rule, or practice, under which it waited fifteen days before issuing liquidation instructions ("new fifteen-day policy") was contrary to law because the Department failed to consider the relevant factors in adopting that policy, rule, or practice. *SKF III*, 33 CIT at __, Slip Op. 09-121, at 24.

A threshold issue is whether SKF has standing to challenge Commerce's decision to issue liquidation instructions fifteen days after publication, and the underlying policy that was the basis of that decision, despite having obtained an injunction against liquidation of its entries. *See id.* at __, Slip Op. 09-121, at 17. In *SKF III*, the court held that SKF had standing to challenge Commerce's new fifteen-day policy, even though SKF did not suffer the harm caused by liquidation of its entries prior to its obtaining an injunction. *Id.* at __, Slip Op. 09-121, at 17-18. The court reasoned that a claim may present an actual case or controversy if the action originally complained of is capable of repetition, yet evading review. *Id.* at __, Slip Op. 09-121, at 17; *see also*, *SKF II*, 33 CIT at __, Slip Op. 09-32, at 20-22; *SKF USA Inc. v. United States*, 31 CIT 405, 411-12 (2007) ("*SKF I*"). Therefore, the first question with respect to standing is whether Commerce will apply its new fifteen-day policy in future reviews. The court takes judicial notice that Commerce is applying its new fifteen-day policy in multiple administrative reviews,

including Commerce's most recent review in which SKF was a party to the proceeding. *See Ball Bearings & Parts Thereof from France, Germany, Italy, Japan, & the United Kingdom: Final Results of Antidumping Duty Admin. Reviews & Revocation of an Order in Part*, 74 Fed. Reg. 44,819, 44,821 (Aug. 31, 2009); *see also Certain Cased Pencils from the People's Republic of China: Am. Final Results of Antidumping Duty Admin. Review*, 74 Fed. Reg. 45,177, 45,178 (Sept. 1, 2009); *Granular Polytetrafluoroethylene Resin From Italy: Am. Final Results of Antidumping Duty Admin. Review*, 74 Fed. Reg. 19,931, 19,932 (Apr. 30, 2009). The adverse effect of the new fifteen-day policy, as the court found to exist in *SKF III*, is, therefore, capable of repetition. The second question with respect to standing is whether the court's granting of a judgment in *SKF III* on SKF's claim challenging the policy has the effect of preventing harm to SKF from future applications of that policy. The judgment granted in *SKF III* was a declaratory judgment. *SKF III*, 33 CIT at __, Slip Op. 09-121, at 24. In a declaratory judgment, a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2006). SKF did not seek further relief on the claim it brought in *SKF III* challenging the new fifteen-day policy. Therefore, the declaratory judgment, standing alone, cannot ensure that Commerce will not again apply the new fifteen-day policy to SKF, causing SKF to file within the fifteen day period its summons, complaint, and motion for injunction against liquidation and, should the government not consent to such an injunction within that period, also to seek and to obtain a temporary restraining order. The type of harm that occurred to SKF, as recognized by the court in *SKF III*, 33 CIT at __, Slip Op. 09-121, at 17-18, 22-23, may occur again from Commerce's continued

application of the new fifteen day policy. The court concludes, therefore, that SKF has standing to challenge the new fifteen-day policy in this litigation.

The next issue is whether the court's adjudication of SKF's claim challenging the new fifteen-day policy is affected by the established principles of res judicata or collateral estoppel. Under res judicata, or "claim preclusion," "'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" *Brown v. Felsen*, 442 U.S. 127, 131 (1979) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). Here, however, SKF is suing on a new cause of action. Although the fifteen-day policy that is the basis of SKF's fourth claim in this litigation is the same policy that SKF challenged, successfully, in *SKF III*, SKF is challenging in this case not only the policy itself but the specific decision by the Department to continue applying that policy, a decision that Commerce announced in the Federal Register notice by which the Final Results were published. Pls.' Br. 32-35; *see Final Results*, 73 Fed. Reg. at 52,825. That decision, which is separate and distinct from the decision challenged in *SKF III*, is subject to challenge under the APA. The court concludes, therefore, that SKF's fourth claim in this case is not the same cause of action on which it sued in *SKF III*, which cause of action was merged into the judgment issued in *SKF III*. Res judicata, therefore, does not apply to SKF's fourth claim in this case or to the defense the government has raised to that claim.

The court reaches the opposite conclusion, however, with respect to the doctrine of collateral estoppel, or "issue preclusion." "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Montana*, 440 U.S. at 153). This case presents issues of law pertaining

to the new fifteen-day policy that are identical to those decided in *SKF III* and that arose in essentially the same factual circumstance. The parties in this case are the same parties that appeared in *SKF III*. For the reasons discussed below, the court concludes that plaintiffs, in support of their claim challenging the new fifteen-day policy, raise certain issues that were decided against them in *SKF III* and that may not be relitigated here.

To challenge the new fifteen-day policy as applied in this review, plaintiffs first argue that this new policy "violates a party's statutory rights as to judicial review" as set forth in 19 U.S.C. § 1516a(a)(2), which plaintiffs construe to grant a party the right to wait thirty days after publication before filing its summons and an additional thirty days, after that filing, to file its complaint. Pls.' Br. 33. Second, plaintiffs argue that the new policy violates USCIT Rule 56.2(a) "as to the timing for filing motions for preliminary injunctions in cases brought under § 1516a." *Id*. Third, plaintiffs argue that the new policy conflicts with a prior decision of the Court of International Trade. *Id.* at 34-35 (citing *Tianjin Mach. Imp. & Exp. Corp. v. United States*, 28 CIT 1635, 353 F. Supp. 2d 1294 (2004), *aff'd mem.*, 146 Fed. Appx. 493 (Fed. Cir. 2005) (per curiam)). The court considered, and rejected, all three of these arguments by SKF in *SKF III*. *See SKF III*, 33 CIT at __, Slip Op. 09-121, at 19-20.

As *SKF III* concluded, 19 U.S.C. § 1516a(a)(2) does not specifically state that Commerce must wait thirty days after publication, or any other specific time period, before the issuance of liquidation instructions. *See id.* at __, Slip Op. 09-121, at 19. To the contrary, the provision requires a party challenging the final results of an administrative review to file a summons within thirty days of the publication of the final results and to file a complaint within thirty days after the filing of the summons. *Id.* As the court also decided in *SKF III*, plaintiffs' argument under

USCIT Rule 56.2(a) is without merit. *See SKF III*, 33 CIT at __, Slip Op. 09-121, at 20. The rule

does not address the question of the minimum time a party is granted to move for the injunction or

the question of how long Commerce must wait before issuing liquidation instructions. *Id.*

Plaintiffs' third argument, which relies on *Tianjin*, was rejected in *SKF III* because the conclusion

reached in that case pertaining to the previous fifteen-day policy was *dicta* because it was not

effectuated in the judgment entered in the case. *Id.*; *see Tianjin*, 28 CIT at 1650-51, 353 F. Supp.

2d at 1309-10.

In challenging the new fifteen-day policy, plaintiffs also argue, more generally, that the

time period available for their preparing and filing their summons, complaint, and motion for a

preliminary injunction is inadequate to allow them to exercise their right to judicial review.

Plaintiffs submit that "Congress . . . recognized that these types of cases are complex and

plaintiffs need some minimal amount of time to make decisions as to the basic parameters of the

judicial review they will seek." Pls.' Br. 34. Noting that *Tianjin*, 28 CIT at 1650-51, 353 F.

Supp. 2d at 1309, stressed the need for Commerce to avoid imposing financial burdens on

litigants in the form of increased attorney's fees and court costs, plaintiffs assert that because of

the new fifteen-day policy "SKF had to forego its statutorily-permitted period for filing a

summons and complaint and the additional time permitted under this Court's Rules for moving

for a preliminary injunction, all in order to ensure that the Court would not lose jurisdiction over

SKF's challenge to the *Final Results*." *Id.* at 35.

Defendant responds that "Commerce's policy is in conformance with the statute, and is a

reasonable method of fulfilling the statute." Def.'s Resp. 33 ("Commerce's liquidation policy as

stated in its *Final Results* gives parties an opportunity to file a motion for a preliminary injunction

before the issuance of customs instructions. Put simply, Commerce's liquidation policy addresses the very concern raised by the Court in *SKF* [*II*] – namely, that parties be given a 'minimally reasonable time' to obtain an injunction." (quoting *SKF II*, 33 CIT at __, Slip Op. 09-32, at 27)).[10]

As they did in *SKF III*, plaintiffs argue that the new fifteen-day policy is unreasonable and burdens impermissibly a party's opportunity to seek judicial review. *See SKF III*, 33 CIT at __, Slip Op. 09-121, at 21. The court concluded that the administrative record in that case did not demonstrate that Commerce considered all relevant factors when it decided to apply the new fifteen-day policy and, in particular, that the record did not disclose "whether Commerce considered the importance of an orderly administration of the statutory scheme, under which affected parties may exercise freely their right to seek and obtain meaningful judicial review, and the need for Commerce to achieve its regulatory objectives without imposing unnecessary costs and burdens on affected parties." *SKF III*, 33 CIT at __, Slip Op. 09-121, at 22. The court concluded that the new fifteen-day policy is contrary to law because Commerce, in adopting the policy, failed to consider the relevant factors, as required by the standard the Supreme Court established in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) and subsequent case law. *Id.* at __, Slip Op. 09-121, at 22-23.

In deciding, in the negative, the issue of whether Commerce acted in accordance with law in adopting the new fifteen-day policy, the court settled an issue of law between the parties that is important to this case and that, in the previous case, arose on facts essentially identical to the facts

---

[10] Defendant-intervenor makes only one argument in response to SKF's claim challenging the new fifteen-day policy: that the new fifteen-day policy does not have the effect rejected by the court as unlawful in *SKF II* (which involved the previous fifteen-day policy). Def.-Intervenor's Resp. 33-34. This is the same as one of the arguments defendant raises with respect to *SKF II*.

in this case.  In the issues and decision memorandum for the final results of the seventeenth

administrative reviews, Commerce stated, in response to SKF's comment objecting to the new

fifteen-day policy, that it "will continue to issue our liquidation instructions 15 days after

publication of the final results of review unless we are aware than an injunction has been filed or

is imminent."  *Issues & Decision Mem. for the Antidumping Duty Admin. Reviews of Ball*

*Bearings & Parts Thereof from France, Germany, Italy, Japan, Singapore, & the United Kingdom*

*for the Period of Review May 1, 2005, through April 30, 2006*, at 65 (Oct. 4, 2007) ("*POR 2005-*

*2006 Decision Mem.*").  Commerce made the same statement in the Decision Memorandum in

this case.  *Decision Mem.* 64.  In both the seventeenth and the eighteenth administrative reviews,

Commerce justified the fifteen-day policy according to the same two reasons, which were "the

six-month deemed-liquidation requirements of 19 USC 1504(d) and CBP's stated need to have a

significant portion of that time to complete liquidation of numerous entries such as those covered

by these antidumping duty orders," stating in both that it "will continue to issue our liquidation

instructions 15 days after publication of the final results of review unless we are aware that an

injunction has been filed or is imminent."  *POR 2005-2006 Decision Mem.* 65; *Decision Mem.* 64.

Because, in the instant case, the issue of whether the new fifteen-day policy was lawfully

adopted has arisen again, it may be argued that, according to the rule of collateral estoppel, the

issue may not be relitigated here.  A competing consideration, however, is that the government's

characterization of the administrative record in the case at bar, as that record relates to the

consideration of the relevant factors, is distinctly different in this case.  At oral argument, counsel

for defendant made an argument that was not made in *SKF III*, which is that the Department's

choice of fifteen days was the result of the Department's employing a "balancing test" that

considered "on the one hand providing parties with time to get an injunction but on the other hand Commerce does have deadlines. It's got the six month deemed liquidation and it does take time for the entries actually to be liquidated, for instructions actually to be sent to Customs and for Customs to act . . ." Tr. 73, Sept. 23, 2009.

The court concludes that collateral estoppel applies to the issue of whether the Department impermissibly failed to consider the relevant factors in its decision. The "balancing test" to which counsel for defendant alluded during oral argument would be directly relevant to the court's adjudication of SKF's fourth claim, and would preclude application of collateral estoppel, were there any indication of the Department's application of this balancing test on the administrative record in this case. The court finds no such indication. Instead, the court finds that the brief discussion of the new fifteen-day policy in the Decision Memorandum is the sole portion of the administrative record, as filed by the Department, relevant to a consideration of the factors by which the Department made its decision. As stated in *SKF III*, 33 CIT at __, Slip Op. 09-121, at 21, "the court is required . . . to examine the agency's action upon the administrative record . . . ."

Even were collateral estoppel deemed not to apply to the issue of whether the fifteen-day policy is unlawful for the Department's failure to consider the relevant factors, the court still would be compelled to conclude, on the merits, that the Department's new fifteen-day policy, and the specific decision to continue to apply that policy in the context of the eighteenth administrative reviews, were contrary to law. Here, as before, the record fails to indicate that Commerce considered any relevant factors competing with the time deadline set by 19 U.S.C. § 1504(d) and the resulting need for Customs to have a significant portion of that time to complete

liquidation of the entries. This shortcoming would require the court to conclude that the policy is unlawful under the "arbitrary, capricious" standard of review. *See* 28 U.S.C. § 2640(e); 5 U.S.C. § 706(2)(A). Here, as in *SKF III*, the record does not disclose any consideration of the need for an orderly administration of the statutory scheme for judicial review or the need for Commerce to achieve its regulatory objectives without imposing the unnecessary costs and burdens on affected parties that result from the Department's policy, rule, or practice. *See SKF III*, 33 CIT at __, Slip Op. 09-121, at 22-23. Absent is any evidence that the Department considered alternatives under which parties would not be as burdened as they are under the fifteen-day time period.

As required by the principle of collateral estoppel, and as the court would have concluded even were that principle not to apply, the court holds that Commerce acted contrary to law in adopting its new fifteen-day policy and in deciding to maintain that policy when implementing the Final Results.

### III. CONCLUSION

On plaintiffs' first claim, the court concludes that Commerce lawfully sought to acquire the COP data of plaintiffs' unaffiliated supplier to determine the constructed value of subject merchandise obtained from that supplier. In response to plaintiffs' second claim, the court remands the Final Results with the directive that Commerce redetermine the constructed value of that merchandise. In adjudicating plaintiffs' third claim, the court affirms Commerce's decision in the Final Results to assign a value of zero to negative dumping margins on individual sales that plaintiffs made above normal value. Finally, the court concludes, on plaintiffs' fourth claim, that Commerce's new fifteen-day policy, and the decision to apply it in this case, are contrary to law, by application of the principle of collateral estoppel.

## ORDER

Upon review of *Ball Bearings & Parts Thereof From France, Germany, Italy, Japan, & the United Kingdom: Final Results of Antidumping Duty Administrative Reviews & Rescission of Reviews in Part*, 73 Fed. Reg. 52,823 (Sept. 11, 2008) (the "Final Results"), plaintiffs' motion for judgment upon the agency record, the responses of defendant and defendant-intervenor, and all papers and proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that the Final Results be, and hereby are, affirmed in part and remanded in part; it is further

**ORDERED** that Commerce's determination of the constructed value of the merchandise that SKF GmbH obtained from its unaffiliated supplier, and the resulting dumping margin applied to SKF GmbH, be, and hereby are, held to be contrary to law and set aside; it is further

**ORDERED** that Commerce shall redetermine the constructed value of the merchandise that SKF GmbH obtained from its unaffiliated supplier in accordance with the principles stated in this Opinion and Order and accordingly shall redetermine a weighted average dumping margin for SKF GmbH; it is further

**ORDERED** that the Final Results be, and hereby are, affirmed in the use of zeroing; it is further

**ORDERED** that Commerce shall submit its redetermination upon remand within ninety (90) days of the date of this Opinion and Order; and it is further

**ORDERED** that plaintiffs and defendant-intervenor shall have thirty (30) days from the submission of Commerce's remand redetermination in which to file with the court comments on the remand redetermination.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge


Dated: December 21, 2009
New York, New York